CHENANGO GENERAL TERM, September, 1849. *H. Gray,*
*Mason, and Morehouse,* Justices.

### SCOTT *vs.* McGRATH.

Giving to an agent unlimited power to sell an article, without restrictions, embraces the power to do what is ordinarily done upon such sales: to wit, to speak of the quality and condition of the article sold, and to contract with reference to its quality and condition. *Per* MASON, J.

The rule is very different, however, where the principal restricts the power of his special agent upon that subject. In such case the restrictions must be strictly pursued, or the employer will not be bound.

Accordingly, where the owner of a horse employed a person to sell the same, or to exchange him for another horse suitable for staging, and the agent exchanged the horse for a span of ponies not suitable for staging, at the same time warranting the horse exchanged by him; it was *held,* in an action against the principal, upon the warranty, that he was not liable.

THIS was an action brought to recover damages for a breach of warranty on the exchange of a horse of the defendant for a span of horses of the plaintiff. The cause was tried at the Tompkins circuit in September, 1848, before Justice Morehouse. The trade was made between the plaintiff and one Gifford, the agent of the defendant. The defendant refused to ratify the trade, claiming that the agent had transcended his authority, and that he, the defendant, was not bound. The only evidence of the agent's authority consisted in the testimony of the agent, Gifford, himself. He testified that the defendant was a stage proprietor, and that he, the witness, was in his employ, and was his agent at Jefferson; that in the month of July, 1849, he exchanged a horse with the plaintiff for a pair of small ponies, and paid $22,50 as the difference; that he was authorized by the defendant to sell the horse, or exchange him; that the defendant's directions were to sell the horse, or trade him for a horse suitable for staging; that he gave no other directions, and that he, the witness, never had sold, or in any other instance traded off, a horse belonging to the defendant. That when he returned with the ponies, the defendant refused to take them, or ratify the trade, and that the agent settled with his

principal and paid him $75 for the horse, and kept the ponies himself. He also swore that the ponies were small, and unfit for staging. Upon this evidence the justice charged the jury, " that the authority from McGrath to Gifford was general, to sell or exchange, and he was therefore bound by Gifford's contract with Scott; that if Gifford was authorized to deal with the article, whether his agency was general or special was immaterial, unless the plaintiff had notice." To this charge the defendant's counsel excepted. The warranty was proved, and the breach, and the jury found a verdict for the plaintiff for $78, and the defendant moved for a new trial.

*Ferris & Cushing*, for the plaintiff.

*Diven, Hathaway & Woods*, for the defendant.

*By the Court*, MASON, J. Although I have had doubts upon this case, I am satisfied, after a careful examination, that the defendant is not liable. We cannot, upon this evidence, regard Gifford as the general agent of the defendant, in this particular trade. It is true, he says he was in the employ of the defendant, and that the defendant was a stage proprietor, and he was his agent at Jefferson. He says, however, at the same time, that he never sold a horse for the defendant, before, or traded one for him, and that he was especially empowered to sell this horse or exchange him. I do not understand, therefore, when he says that the defendant is a stage proprietor, and that he is in his employ, and is his agent at Jefferson, that his employment as agent has been, or is, to traffic in horses for the defendant. And I should not understand that such was the employment of an individual were he to say that he was agent for a stage proprietor at a particular point upon his line of staging. I think it could be hardly said, in such a case, that the witness meant to be understood that he was a general agent for the proprietor, to traffic in horses, but rather his agent to receive daily fare and look after passengers, and see to the daily interests of running the stages. A general agent is one put in the

place of his principal, to transact all manner of business, or to transact all his business of a particular kind.   (6 *Bac. Abr.* 560, *Bouv. ed. Dunlap's Paley on Agency*, 199.   2 *Kents' Com.* 620.)   A special agent, on the contrary, is one employed to do a specific act, or certain specific acts.   (6 *Bac. Abr.* 560, *Bouv. ed. Dunlap's Paley on Agency*, 202.)   The general agent has authority to bind his principal by all acts within the scope of his employment, and that power cannot be limited by any private order or direction not known to the party dealing with the agent.   (*Dunl. Paley on Agency*, 200.   *Jeffrey* v. *Bigelow*, 13. *Wend.* 520.)   The rule as to a special agent is well defined by Chancellor Kent.   He says, " An agent constituted for a particular purpose, and under a limited power, can not bind his principal if he exceeds his power.   The special power must be strictly pursued."   He adds, " Whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power."   Paley lays down the same rule, although in different language.   He says, " A special agent does not bind his employer unless his authority be strictly pursued ;  for it is the business of the party dealing with him to examine his authority ;  and therefore, if there be any qualification or express restriction to the commission it must be observed :  otherwise the principal is discharged."   (*Dunl. Paley on Agency*, 202.)   This is an elementary principle of the common law ;  and the doctrine has been too long and too well settled, by a long series of adjudications, both in England and in this country, to permit a discussion of the soundness of the principle upon which the rule is founded.   And on looking into the books should we find, as was alledged by the plaintiff's counsel we should, any adjudged case advancing an opposite doctrine, we should not regard such case as authority.   It has been supposed by the plaintiff's counsel that the courts in this state, in one or two recent cases, have encroached upon this rule by advancing a doctrine in conflict with the rule.   And we were referred to the cases of *Sandford* v. *Handy*, (23 *Wend.* 260,) and *Nelson* v. *Cowing & Seymour*, (6 *Hill*, 336,) as holding an opposite doctrine.   I have bestowed a careful examination upon these cases,

and I find that they do not decide any thing in conflict with the rule above laid down. *Sandford* v. *Handy* was the case of a special agent; and all the case decides is that the representations for which the party was sought to be made liable were within the scope of the agent's authority, and therefore the court held the principal liable. And the chief justice, who delivered the opinion of the court, recognizes the rule for which we have contended, in the following language put by way of illustration of the rule : " Thus in the case of a factor or servant of a horse dealer in the habit of making sales, if the factor or servant should be specifically instructed, in a given instance, the instructions would not be binding if in conflict with the general authority derivable from their occupations. But if a person who had no such general character should be employed to do a particular act, such as selling a lot of goods, or a horse, and in respect to which his power is specifically limited, then if he exceed the limitations, his principal will not be bound." All that the case of *Nelson* v. *Cowing & Seymour* decides, in reference to the point under consideration, is, that a special agent, authorized to sell an article, is presumed to possess the authority or power to warrant the quality and condition of the article. This is upon the principle that the general power to sell the article, without any restrictions imposed, carries with it the power or authority to contract as to the quality or condition of the thing sold ; and this is an old and familiar rule. (*Alexander* v. *Gibson,* 2 *Camp.* 555. *Fenn* v. *Harrison,* 3 *T. R.* 757. *5 Esp.* 55. *Dunlap's Paley on Agency,* 197.) Paley lays down the rule as follows : "An agent employed to get a bill discounted may, unless expressly restricted, indorse it in the name of his employer, so as to bind him by that indorsement. And so a servant intrusted to sell a horse may warrant, unless forbidden. And that it is not necessary for the party insisting on the warranty to show that he had any special authority for that purpose. (*Dunlap's Paley on Agency,* 198. *Alexander* v. *Gibson,* 2 *Camp.* 555. 5 *Esp. Rep.* 55. 3 *Id.* 65.) The cases proceed upon the principle above stated, that the unlimited power to sell without restrictions embraces the power to do what is ordinarily done upon

such sales; to wit, to speak of the quality and condition of the article sold, and to contract with reference to its quality and condition. The rule is very different, however, where the principal restricts the power of his special agent upon this subject. In such case the restrictions must be strictly pursued, or the employer will not be bound. This principle is well exemplified in the case of *Fenn* v. *Harrison,* (3 *T. R.* 757,) in which the defendants employed one F. Hewett to get a bill of exchange discounted, of which they were the owners. They instructed Hewett to carry the bill to market and get cash for it, but that they would not indorse it, and it was held that Hewett had no power to bind them by contract of indorsement or otherwise. And so where the employer directs his special agent to sell the horse, but not to warrant him, the agent can not bind his employer by a warranty. (*Dunlap's Paley on Agency,* 210. 6 *Bac. Abr.* 560, *tit. Merchant and Merchandise, B.*) There is an illustration of the rule put by Justice Ashurst in the case of *Fenn* v. *Harrison,* (*supra,*) which I do not exactly understand. He says, "If a person keeping livery stables and having a horse to sell directed his servant not to warrant him and the servant did nevertheless warrant him, still the master would be liable on the warranty, because the servant was acting within the general scope of his authority, and the public cannot be supposed to be cognizant of any private conversation between the master and servant." But he adds, "If the owner of a horse were to send a stranger to a fair, with express directions not to warrant the horse, and the latter acted contrary to the orders, the purchaser could only have recourse to the person who actually sold the horse, and the owner would not be liable on the warranty, because the servant was not acting within the scope of his employment." I find this case stated in precisely the same language in Bacon's Abr. and in Paley on Agency. (*See* 5 *Bac. Abr.* 560, *Bouv. ed.; Dunlap's Paley on Agency,* 203.) The case is very loosely stated, and well calculated to mislead; and in the broad and unqualified language in which the case is put, I am not prepared to yield assent to the proposition. If the livery stable keeper has a servant whose only business is to

Scott *v.* McGrath.

clean his stables and see to the feeding and taking care of his horses, and to harnessing them when ordered, and who has never been permitted to make sales or exchanges of the horses, were sent by his master to make sale of a particular horse, with special instructions not to warrant, I do not hesitate to declare that such servant or agent could not bind his employer by warranty. If, on the contrary, the livery stable keeper permits his servant to sell or exchange, then the rule is different; for then the agent is acting within the scope of his general authority. But to apply the principle to the case under consideration. Here the defendant empowered his agent Gifford to sell the horse in question, or to exchange him for another horse suitable for staging. There was nothing said about warranting. In case Gifford had sold his horse, he would undoubtedly have been authorized to bind the defendant by warranty, as there were no restrictions in reference to warranting upon the sale, for the reasons above stated, and for the reason which is perhaps more explicitly stated by Mr. Paley than we have stated it above. He says, "Inasmuch as the power to do any act comprises a power to do all such subordinate acts as are usually incident to, or are necessary to effectuate, the principal act, in the best and most convenient manner, it is necessary even in regard to a special agent if it be intended to exclude from his authority any circumstance which would otherwise fall within it, that it should be done by express directions." In reference to exchanging the horse in question, however, the agent is limited by express instructions, to wit, to exchange for a horse suitable for staging. The question arises, then, can this agent bind the defendant when he exchanges the horse for a pair of small ponies, concededly unfit for staging, and pays $22,50 as the difference? I do not think he can, while we recognize the rule that the special agent can not transcend his authority, and bind his principal. I lay out of view, entirely, in this case, the fact that the defendant is a stage proprietor, and that the witness Gifford has sworn that he was in the employ of the defendant and was his agent at Jefferson; because the agent swears at the same time that he had never sold or traded off a horse for the defendant, before. And

when we have the additional fact appearing in the case, that he assumed to sell the horse in question because of express authority given him by the defendant, I do not think that we should be justified in saying that Gifford was the general agent of the defendant at Jefferson to buy and sell, or to sell and exchange horses. The learned judge, in his charge to the jury, stated that " *the authority from McGrath to Gifford was general, to sell or exchange.*" His authority to sell was general, while, on the contrary, his authority to exchange was limited. The learned justice also stated " that if Gifford was authorized to deal with the article, whether his agency was general or special was immaterial, unless the plaintiff had notice." This is clearly wrong. The judge seems to have overlooked the distinction between a general and special agent. If Gifford was the general agent of the defendant, in the sale or exchange of horses, then he might bind the defendant, however much he might transcend his instructions. If, on the contrary, he was the special agent of the defendant to sell or exchange the horse in question, then he can not bind him in any case where he has disobeyed express instructions. I think that the judgment in this case must be reversed, for the reasons already stated. And as the plaintiff may supply the proof upon a new trial, the cause must be retried if the plaintiff wishes another trial.

-                          New trial granted.

---

SAME TERM.    *Before the same Justices.*