———o-o-o———

## BOTSFORD *vs.* McLEAN and McPHERSON.

When parties have entered into a written contract it must be presumed to express their common intention, and to speak their actual agreement. But if it be clearly shown that such is not the case, and that such written contract is untrue, and misrepresents or misstates their real agreement and intentions, as made and understood by both parties, in some essential particular, then such contract is a mistaken one, and the mistake may be corrected, in a court of equity.

A *mutual* mistake which will afford a ground for relief from a contract, by reforming it, means a mistake reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument.

Upon a sale of personal property the purchasers agreed to pay therefor the sum of $6000, viz. $2000 in cash, and the balance in four equal annual payments, *with interest,* for which they were to execute their four several promissory notes, for $1000 each, with interest, payable in one, two, three and four years, and to secure the payment thereof by a chattel mortgage upon the property. The $2000 was paid down, and a chattel mortgage was executed, conditioned for the payment of the said notes, *with interest.* Four several promissory notes were also executed by the purchasers, for $1000

Botsford *v.* McLean.

each, payable at the times agreed, but two of them were so drawn as not to bear interest. The vendor, seeing that two of the notes were on interest, assumed that the other two were also on interest, and accepted the same, believing that all were properly drawn. The purchasers, knowing that two of the notes were so drawn as not to bear interest, purposely abstained from calling the vendor's attention to the fact.

*Held* that this was a case where the contract as executed and evidenced in the written papers was not carried out according to the agreement as the same was understood by both parties ; and that the error in the two notes presented a clear case of *mistake* on both sides, for which equity could afford relief.

And the purchasers having been trusted to draw the notes, and they procuring their attorney to draw them, and then executing and delivering the same to the vendor as the notes required by the contract, although aware that two of them did not bear interest ; *Held* that this was a clear case of *fraud,* for which the vendor was entitled to have the notes reformed.

When a bargain is fairly made and concluded and its terms clearly understood, the rule of *caveat emptor* ceases, and both parties, thereafter, are bound to exercise good faith in carrying out the contract and executing its provisions.

If one party is trusted to reduce the contract to writing he is bound to do it truly, and any variation from it, either by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party and distinctly assented to by him, is a clear fraud.

THIS was an appeal from a judgment entered upon the report of a referee upon a second trial. The action was brought to reform two certain promissory notes given by the defendants to the plaintiff, so as to make them bear interest. The grounds on which the relief was sought were mistake and fraud. When the case was formerly before the court, the judgment in favor of the plaintiff was set aside because the referee had not found that certain facts existed. (*See* 42 *Barb.* 445, *S. C.*) On the second trial before the referee, the plaintiff rested on the pleadings, and claimed to be entitled to judgment for the relief demanded in the complaint. The defendants thereupon moved to dismiss the complaint, which was denied by the referee, who held that the defendants' answer "does not deny the *facts* stated in the complaint on which the plaintiff bases his allegations of fraud, mistake and omission ; and that if these facts not thus denied make out a case of fraud, mistake or omission,

the plaintiff is entitled to judgment without introducing evidence." The referee further held that, under the defendants' second answer, they might give evidence on their part as to the facts stated in the complaint on which the plaintiff's allegations of fraud, omission or mistake, were based. The referee found, substantially, all the facts stated in the complaint, except the agreement to pay interest, and on that point he found that in the parol agreement, made before the execution of the writings, "nothing was said by either party on the subject of interest upon that part of the consideration not paid down, or upon the notes to be given by the defendants." He also found "that the defendants knew or believed, before the notes were delivered, that the plaintiff expected that they were all to bear interest, but that nothing was said or done by the defendants to mislead the plaintiff." His conclusion of law was that the plaintiff was not entitled to the relief demanded in the complaint, and that the complaint should be dismissed, with costs; and judgment was ordered accordingly.

*Edward Harris*, for the appellant.

*W. F. Cogswell*, for the respondent.

*By the Court*, E. DARWIN SMITH, J. It is a familiar and well settled doctrine that where, through mistake or fraud, a contract or conveyance fails to express the actual agreement of the parties, it will be reformed by a court of equity so as to conform to such agreement and carry into effect the real intent of the contracting parties. This doctrine was fully established in this state in the case of *Gillespie* v. *Moon*, (2 *John. Ch.* 585,) in an opinion of Chancellor Kent, which Chief Justice Spencer, in *Lyman* v. *The United Insurance Co.* (17 *John.* 377,) in the Court of Errors, said "commanded his entire assent and would remain a land mark for future decisions."

Botsford *v.* McLean.

But though the rule is well established that equity will give relief in cases of clear mistake, or fraud in written contracts, there is obviously considerable discrepancy and incertitude in the cases in respect to the application of the rule. So far as *mistake* constitutes the ground of jurisdiction in the courts of equity to give relief, it is, I think, quite well settled that the contract will be reformed in all cases of clear mistake or, as some of the cases say, of *mutual mistake.* A little confusion and misconception, I think, has crept into the cases from the inexact use of the word *mutual* as applied by way of description or classification of the kind of mistakes which courts of equity would reform. According to the real signification of the word *mutual* in such connection, and the ordinary acceptation and understanding of the term, mutual mistake would mean a mistake reciprocal and common to both parties, when each alike labored under the same misconception in respect to the terms of the written instrument. Story, from whom I think the term is derived, uses it in this sense. (*See Equity Jurisprudence,* § 155.) He there says of mutual mistake : "To allow it to prevail in such a case would be to work a surprise or fraud upon both parties and certainly upon the one who is the sufferer. Such phrase is not used by Chancellor Kent in *Gillespie* v. *Moon,* (*supra,*) or Lord Hardwick, in *Henkle* v. *The Royal Assurance Co.,* (1 *Ves.* 317,) or by Lord Elden, in *Townshend* v. *Stangroom,* (6 *id.* 331,) or by Lord Thurlow, in *Shelburne* v. *Inchiquin,* (1 *Brown's Ch. R.* 340,) or by Chancellor Walworth, in *Coles* v. *Bowne,* (10 *Paige,* 534,) which were all cases where the doctrine was discussed upon what principle the court would reform mistakes. These learned chancellors all say that the mistake must be a clear one, or a plain one, and clearly established ; and it must be a mistake as is said in *Adam's Equity,* (171,) "on both sides," when as Lord Thurlow said in *Shelburne* v. *Inchiquin,* "the words taken down in writing were contrary to the concurrent intentions of all the parties ;" or as Chancellor Walworth said in

*Coles* v. *Bowne,* (*supra,*) where "a mistake has occurred in reducing the agreement to writing." The courts of equity clearly have no right to make contracts for men. They have no right where parties have attempted to contract but have failed, in fact, to agree, or to come to a clear meeting of ·their minds, to reform or change their executed contract, so as to carry out the interpretation of it which one party claims in opposition to the understanding or intent of the other party. When parties have entered into a written contract it must be presumed to express their common intention and to speak their actual agreement. But if it be clearly shown that such is not the case, and that such written contract is untrue, and misrepresents or misstates their real agreement and intentions as made and understood by both parties, in some essential particular, then such contract is a mistaken one, and such mistake may be corrected in a court of equity, in respect to such particular error. This inaccurate use or misapplication of this word *mutual* has led more or less to the idea that mistakes in contracts will not be reformed in the courts of equity where the mistake in point of fact in respect to the terms of the written contract was confined to one of the contracting parties, and there was, in this sense no mistake in the contract so far as relates to the other party. Where, in fact, the error or omission in the written contract complained of was known, at the time of its execution or delivery, to the party benefited by such alleged error, omission or mistake.

Such is the present case. If there was mistake in the execution of the notes in question in this action, in the omission of the words "*with interest*" in the two promissory notes of $1000 each, having the longest time to run, such omisssion was clearly well known, at the time, to the defendant, and was unknown to the plaintiff. The first question which meets us therefore, in the examination of the case is, whether the proof makes out a clear case of mistake on both sides, such as we have seen is called in some cases, a mutual

mistake, i. e. a mistake in conforming the writings in respect to the two promissory notes in question to the actual agreement of the parties. When this case was before us on a former occasion (*see* 42 *Barb.* 445,) the referee, without finding either mistake or fraud in carrying out the agreement between the parties in respect to the promissory notes in question, found that the said notes did not conform to the agreement between the parties, in that they did not contain a provision for drawing interest from date, and for that reason directed that the same be reformed—basing his finding upon the terms of the bill of sale and chattel mortgage delivered at the same time, irrespective of the parol proof. He granted a new trial on the ground that the bill of sale, chattel mortgage and notes, all delivered at the same time, must be construed together, and did not, upon their face, furnish satisfactory evidence of the facts alleged, that the last two notes should draw interest, and that neither mistake or fraud was distinctly found as matter of fact.

The case as it comes before us now is essentially changed. The referee find facts which clearly imply, what I think he ought to have found as a matter of fact, that the contract between the parties called for interest on the four notes which the defendants gave and were to give in part consideration for the property sold to them by the plaintiff. He does find, however, that in the parol agreement for the trade between the parties, nothing was said by either party on the subject of interest on that part of the consideration not paid down, or upon the notes to be given by the defendants. If this were so, and there is conflict in the evidence on this point, I do not think it at all conclusive on the question whether the notes were not to draw interest. The parties were contracting for a sale of personal property, and agreed upon a sale thereof, by the plaintiff to the defendants for $6000, of which sum $2000 was to be paid in hand and the balance in four annual installments of $1000 each. There was then the sum of $4000 upon which a credit was to be given and the

same was to be forborne, and payments made in one, two, three and four years. If nothing was said about interest most men, I think, would consider it implied that the debt was to be on interest. In the great mass of contracts made in incurring or extending debts, when time is given for their payment at a future day, the business men of this country, I think, would generally understand that the debt was to be on interest, and would rarely say any thing on the subject. In ninety-nine cases out of every one hundred, when a man bargains for credit or time of payment, or asks to borrow money or purchase property on time or extend a debt, would either party think of speaking about interest, unless usury was sought or exacted? Men in such cases would perfectly well understand each other, that interest, of course the lawful interest of the state, was part of the contract, as much as if it was expressly mentioned; unless the contrary was distinctly said. What men understand in such cases, what is implied from the course of the business or of general transactions of like nature between contracting parties, is as much within the contract as if it were ever so distinctly expressed. Courts and referees and juries can not and should not divest themselves of their common sense and common experience when considering such cases. It is apparent from the facts found by the referee and the evidence besides, that both these parties and all the persons concerned in making and consummating this trade acted upon this understanding in respect to interest. Else why, if nothing was said about interest, is it mentioned in the chattel mortgage in respect to the debt of $4000 and in respect to the notes, four times, and why was it put in the two first notes, and why was it when the defendants' attorney called the attention of McLean to the fact that two of the notes were on interest and two without interest, and he was advised to leave them as they were, "he objected, but finally consented to it?" But this chattel mortgage upon its face, connected with other facts proved and found by the referees, clearly shows, I think, not only that it

was the understanding of the parties that the four notes should all draw interest, but is itself an express agreement to that effect. This chattel mortgage and the bill of sale the referee finds were in fact drawn by the defendants' attorney and read by him to the parties and examined by them. The parties then separated, and the notes were afterwards drawn by the said attorney, in the presence of McLean but in the absence of Botsford. The parties then came together again and after an interval of half an hour or so, and the papers were delivered. Upon these facts, the bill of sale and the chattel mortgage thus read to and examined by the parties, must be held to express their actual agreement. It was read to both and examined by both, and both must be deemed to have assented to its terms. Let us see what they are. The first sentence in the chattel mortgage states, in the ordinary form of such papers, that the defendants "are indebted to the plaintiff in the sum of $4000 being for the consideration of four several promissory notes in writing this day executed by us to the said David Botsford," one of the said notes being for $1000, payable in one year from date ; one like note at two years ; one like note at three years ; and another like note at four years from date. Then next it is as follows : "Now for securing the payment of the said *debt* and the interest thereon from the date hereof, we do sell, &c. the property described in the schedule referred to," &c. Then it is provided that if the defendants shall pay at maturity the principal of the said several promissory notes with *interest thereon*, as said notes shall become due and payable, then the transfer to be void. But in case of the non-payment of said *debt* and *interest* at the times specified therefor, then Botsford may enter and take the property and sell the same, &c. as in ordinary chattel mortgages ; and at the close is a covenant by the defendants to pay any deficiency of said debt, *interest* and costs. By the clear and express terms of this chattel mortgage, the whole debt of $4000 was to draw interest and the notes were all to be upon interest. No dis-

tinction is made between them, and each of them respectively represented one fourth of the debt.

The notes subsequently drawn by the defendants' attorney were to be prepared to perfect and complete this contract. They were all to be on interest, and the two notes not upon interest were not such as the agreement, made, recognized and assented to in and by the said chattel mortgage, plainly called for and required. It is not pretended that there was any change of the agreement, or any new terms made by the parties after the reading of the bill of sale and the chattel mortgage. The referee finds that when the parties came together again the plaintiff examined the two notes having the shortest time to run, and seeing they were on interest assumed that the other two were also on interest, without examination, and accepted the notes believing that all were so drawn as to bear interest; and that the defendants knew at the time of the delivery of the notes that the two having the shortest time to run were so drawn as to bear interest, and that the two others were so drawn as not to bear interest, and that they purposely abstained from calling the attention of the plaintiff to the fact that the two last notes were not on interest. Nothing I think can be clearer than that both parties understood that these notes and all of them were to draw interest. This then is a case where the contract as executed and evidenced in the written papers was a mistaken one as to both sides, and that it was not carried out according to the agreement as the same was understood by both parties. Such error in the written evidence of the contract presents a clear case of mistake on both sides. The referee, we think, should have so found as matter of fact.

But, I think the plaintiff is entitled to have these notes reformed also upon the ground of fraud; and that upon the facts found by the referee and appearing in the proof he would have been warranted in directing a judgment for the plaintiff on this ground. Assuming that the chattel mortgage expressed upon its face the true agreement between the

Botsford *v.* McLean.

parties in respect to these notes, the making of the notes was a mere clerical act in the completion or fulfillment of the formal terms of the contract. The defendant McLean was trusted to draw these notes and they were in fact drawn by his attorney, and in his presence, and his attention called to the fact that two were on interest and two not on interest, and he then executed them in that shape, and he subsequently delivered them to the plaintiff as the notes required and called for by the contract, purposely abstaining, as the referee finds, from calling the plaintiff's attention to the fact that two were not on interest, and well knowing at the time that the plaintiff assumed and supposed they were on interest and would not have received them in their present shape if he had known that they were not on interest. This, I think, a clear fraud. These notes were put off upon the plaintiff in their present shape by design. It is something more than a mere *suppressio veri*. It is a practical deceit. The attorney for the defendants testifies as follows : " I called McLean's attention to the fact that the two last notes were not on interest, and advised him that he had better leave them as they were, and gave him my reasons. McLean at first objected but finally consented." "I (says the attorney) told McLean that if Botsford took the notes and looked at them and accepted of them it would be an end of them." This was the trap laid for Botsford, and it seems he fell into it. He took the notes when handed to him, four on one sheet, looked at the first two and saw that they were upon interest, and assuming that the others were in the same form, folded them up and put them in his pocket. This advice of the attorney is the key to the whole case. He applied the doctrine of *caveat emptor* to these notes—as though the case was one of contract for the sale of commodities open to observation of both parties. In such cases, at law, a party who makes no misrepresentation and practices no deceit may ordinarily make as good a bargain as he can. Both parties, in such cases, stand upon their guard

and upon common ground, and each must look out for him-self. But when a bargain is fairly made and concluded and its terms clearly understood, this rule ceases, and both par-ties thereafter are bound to exercise good faith in carrying out the contract and executing its provisions. If one party is trusted to reduce the contract to writing he is bound to do it truly, and any variation from it, either by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party and distinctly assented to by him, is a clear fraud. In *Gillespie* v. *Moon*, (*supra*,) the deed sought to be reformed, in its terms, by metes and bounds, described 250 acres of land, when the contract of sale only called for 200 acres. Chancellor Kent said : "The only doubt with me is whether the defendant was not con-scious of the error in the deed, at the time he received it and executed the mortgage, and whether the deed was not accepted by him in fraud or with a voluntary suppression of the truth."

In *Wiswall* v. *Hall*, (3 *Paige*, 313,) where a vendee made an untrue deed of the premises, which he professed to sell, relief was given on the ground of fraud, and the defendant decreed to rectify the conveyance. In *DePeyster* v. *Has-brouck*, (1 *Kern*. 582,) a mortgage was reformed, for the fraud of the mortgagor in making and executing it so as not to cover all the property embraced in the propositions and agreement for the loan intended to be secured by such mortgage. The case of *Rider* v. *Powell*, (28 *N. Y. Rep.* 310,) is also quite in point. In that case Rider made an oral contract to sell his farm to the defendant for $4600, of which $1600 was to be paid in hand and secured by notes, and the balance to be secured by a bond and mortgage for $3000 on the premises, payable in ten installments with annual interest. The bond and mortgage given to secure the $3000 provided for the payment of $300 and interest on the same in yearly payments till the whole sum was paid, so that Rider should receive interest on the installments

instead of annual interest on the whole of the principal sum unpaid. It appeared in evidence that the defendant directed the attorney who drew the papers, how to draw the bond. The bond and mortgage was delivered to and accepted by Rider, as the notes were in this case, in fulfillment of the oral contract, upon the supposition that they were right, and the plaintiff did not discover the mistake in the bond and mortgage, about the interest, till the next day, when he demanded of the defendant a reformation of the bond and mortgage so as to give him annual interest, which was refused, and the suit was brought immediately to reform said bond and mortgage. The action was tried at special term, where the judge found that there was a mistake on the part of the plaintiff as to the interest he was to receive by the bond and mortgage, and decided as matter of law that he was entitled to have the mistake corrected and the bond and mortgage amended or modified so that he should receive annual interest, on the whole sum unpaid, and gave judgment accordingly. This judgment was affirmed at general term in the 6th district, and then went by appeal to the Court of Appeals. The Court of Appeals floundered over it a good deal. Four judges were for the affirmance of the judgment, and three for reversal on the ground that there was no finding of facts made at special term, but finally, as the report states, the rule for judgment in favor of the plaintiff was construed as a finding of the necessary facts, viz. fraud or a *mistake of facts* on the part of the defendant, and the judgment was affirmed upon that theory. While the ground upon which the decision was put, there being in the case no finding of facts, is doubtless untenable, the principle asserted in the decision is clearly right and sound. It is that where a party who is to execute papers in consummating a contract draws, or causes or procures them to be drawn erroneously, and palms or puts them off upon the opposite party in that shape, without apprising him of the error or alteration, he commits a fraud, and relief in equity in reforming the instru-

ment may be had, on the ground either of *mistake* or *fraud*. That case in principle decides this. Indeed this is a much stronger case upon the facts and proof, for relief than the case of *Rider* v. *Powell*.

We think, therefore, that the plaintiff was entitled to the relief demanded in his complaint, and that such relief can clearly be granted, based upon the ground of mistake and fraud, or upon either ground of mistake or fraud; and the referee should have so found and decided. The judgment must therefore be reversed and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, March 5, 1866. *Welles, E. D. Smith* and *Johnson*, Justices.]