# SUPREME COURT.

## George N. Mills agt. Diana C. Lewis.

An instrument cannot be *reformed* on the ground of *mistake* by one of the parties to it. It must be a case of *mutual mistake* by both parties, where there is no question of fraud involved, to authorize a reformation of the alleged mistake.

Thus, where the plaintiff specially authorized his agent to sell a colt, which belonged to the plaintiff, to the defendant, and to take in payment therefor, a mortgage which the defendant owned, provided the defendant would guarantee the *payment* of the mortgage; and on negotiation between the agent and the defendant, the latter refused to guarantee the payment of the mortgage, but would guarantee its *collection* only, which the agent consented to take; and on drawing the assignment of the *mortgage* by the scrivener of the defendant, instead of drawing it with a guarantee of collection, he drew it with a guarantee of *payment*, and the defendant executed it without *reading it*, and it having been delivered to the plaintiff without notice of any mistake having occurred on the part of the defendant, and being such a guarantee as he requred, he thereupon delivered to the defendant the colt.

*Held*, in an action on the guarantee by the plaintiff, that this not being a case of mutual mistake, and the plaintiff being free from any imputation of fraud, and the mistake happening through the scrivener of the defendant, the result was that there never was a meeting of the minds of the parties as to the sale; and it was competent for the defendant to return the colt and rescind the contract, which was the only relief to which she was entitled; and the defendant not having done this, judgment must be ordered for the plaintiff for the amount due upon the mortgage and interest.

*Jefferson Special Term, March,* 1869.

This action was brought on defendant's assignment and guarantee of a real estate mortgage, executed by one Asel Spicer and wife to defendant, to secure a portion of the purchase price of certain premises.

A bond was executed by Spicer and delivered by him, with the mortgage to the defendant. Her assignment and guarantee to the plaintiff were in writing and in the following words:

"For and in consideration of the sum of sixty dollars to me in hand paid, I hereby sell and transfer the within mortgage to George N. Mills of Hounsfield, and guarantee the payment of the same with interest."

There was no assignment or delivery to plaintiff of the accompanying bond nor proof given on the trial of its loss.

One Rufus W. Baldwin, the agent of the plaintiff, negotiated the sale of a horse in exchange for the mortgage under instructions from plaintiff, not to make the exchange, unless the defendant would guarantee the *payment* of the mortgage. This the defendant refused to do, but finally agreed with Baldwin to make the exchange and guarantee the *collection* of the mortgage. One O. H. Rundell, was employed to draw the assignment and guarantee of *collection*, but by mistake, Rundell drew a guarantee of *payment*, instead of collection of the mortgage, and the defendant executed the same and delivered the mortgage to the agent Baldwin.

The mistake was known to Baldwin at the time of its delivery, but the defendant never knew of the error until after the mortgage had fallen due and the commencement of this action, but supposed the guarantee to be one of *collection* instead of payment as was her agreement with said Baldwin.

The defendant in her answer, alleged the mistake and prayed the reformation of the guarantee.

This action was tried before Justice MULLIN, at Special Term, in March, 1869.

L. J. DORWIN, *for plaintiff*.

I. The action is upon the guarantee of the payment of the mortgage. The mortgage not being paid, an action lies—It is immaterial whether an action could be maintained upon the mortgage, or whether there was any bond or not.

II. There is no pretence of any fraud.

III. A mistake to be available, must be mutual between the parties. The defendant claims a mistake, the plaintiff denies it. Proof must be made equivalent to an admission

by plaintiff.   (*Story's Eq.*, §152—3,5,6; 26 *Wend.*, 186; 2 *J. Ch.*, 633; *id.*, 596; 1 *Paige*, 278).

There is no proof whatever of any mistake on the part of the plaintiff.

1. The assignment was drawn by the direction of defendant, in plaintiffs' absence, and executed and sent to plaintiff for his acceptance before he delivered the property.

2. The fact that the defendant did not read the assignment is no defense—she might have read the assignment when she signed it, and she is now estopped from controverting anything therein contained. (*Jackson* agt. *Croy*, 12 *John.* 428).

ANSON B. MOORE, *and*
JOHN C. McCARTIN, *for defendant.*

I. This action is based upon a written assignment and guarantee of a *mortgage* merely. There is no proof of a delivery of the bond with the mortgage, and by the language of the assignment the bond was never transferred to the plaintiff. The court will not *infer* a delivery, or transfer of the bond, without positive proof; and clearly not where the very *assignment* and transfer by which title to the mortgage is claimed do not convey the bond.

The plaintiff is not entitled to recover in this action because,

1. The bond is the debt, and the mortgage is but an incident to it. (*Martin* agt. *Meulin*, 2 *Burr*, 960; *Green* agt. *Hunt*, 1 *Johns.*, 580; *Jackson* agt. *Blodget*, 5 *Cow.*, 202; *Jackson* agt. *Bronson*, 19 *Johns.*, 325; *Wilson* agt. *Troup*, 2 *Cow.*, 231; *Cooper* agt. *King*, 17 *Abb.*, 342).

2. There was no transfer of the bond, and hence there was no *transfer* to the plaintiff of any debt against the defendant by virtue of the mortgage. The transfer was of the mortgage only. (*Merritt* agt. *Bartholick*, 36 *N.Y. R.*, 44).

3. The transfer of the mortgage without the bond, which is the debt, is a nulity,and no interest is acquired by it. (36 *N. Y. R.*, 44; 4 *Johns.*, 41; 9 *Wend.*, 80; 5 *Johns., ch. R.*, 570).

II. The plaintiff authorized Baldwin to make the exchange of the horse for the mortgage, Baldwin was the agent of plaintiff in the transaction and the plaintiff is bound by his acts. Plaintiffs *secret* instructions to B. in relation to the kind of guarantee defendant should give, would not bind her, unless communicated to her by the agent Baldwin. No such communication was ever made to defendant.

III. Baldwin, the plaintiff's agent knew at the time of the execution of the assignment and delivery of the mortgage that the defendant intended to guarantee the *collection* of the mortgage and not its payment.

Knowing that defendant had executed a paper, she did not intend to give, and had refused to execute ; and knowing the same had been executed through inadvertence and mistake ; he retains the instrument and purposely deceived her, thereby perpertrating a *gross fraud* upon her. The *knowledge* of the agent was the *knowledge* of his *principal*— the fraud was in this case the act of the plaintiff. (*Jeffrey* agt. *Bigelow and Tracy*, 13 *Wend.*, 518 ; 15 *Johns. R*, 44 ; 21 *Wend.*, 279; 1 *Hill. R.*, 501; 17 *Barb.*, 171; ·26 *Barb.*, 564.)

IV. Actual injustice has been done the defendant in this case, through inadvertance or mistake; and "where it is palpable that actual injustice has been done through *inadvertance* or mistake of counsel, although it arose from mistaken apprehension of the law, the *court* will feel bound to *restore* the party, if it can be done without prejudice to the rights of other parties," (*Levy* agt. *Joyce*, 1 *Bosw.*, 622; *Camerron* agt. *Irwin*, 5 *Hill.*, 272; *Leavitt* agt. *Palmer*, 3 *N. Y.*, 19).

MULLIN, J. The objection by the defendants counsel, that as the bond to which the mortgage was collateral was not assigned, the mortgage is of no validity, and the defendant cannot be made liable on a guarantee thereof, was not taken on the trial, and cannot be insisted on now. The plaintiff might perhaps have shown that the bond had been assigned or that there never in fact, was one executed. It is enough to know that he has had no opportunity to be heard and the objection must be disregarded.

There being no fraud on the part of the plaintiff or of Baldwin, and there being no motive which could induce the scrivener who drew the assignment and guarantee to practice a fraud on the defendant, I think the only ground for relief, if there is any, is on the ground of mistake inadvertance or surprise. I think upon the proofs before me, it is satisfactorily established that the defendant did not intend to execute a guarantee of payment, nor did she know at the time she executed the paper drawn by Mr. Rundell, that it was not a guarantee of collection. So far as the defendant is concerned therefore, a clear case of mistake is made out.

But it is well settled that the mistake of one of the parties to a contract is not enough to authorize the court to reform it; it must be the mutual mistake of both parties. (*Nevins* agt. *Dunlap,* 33 *N.Y.,* 676; *Botsford* agt. *McLean,* 42 *Barb.,* 455). A new trial was granted by the special term in this case, and on the second trial it was proved that the defendants perpetrated a gross fraud on the plaintiff, in reference to the notes sought to be reformed, and the notes were decreed to be reformed according to the prayer of the complaint, (*Same* agt. *Same,* 45 *Barb.,* 478; *Kent* agt. *Manchester,* 29 *Barb.,* 595; *Story's Eq.,* § 155, 160.)

The important question in this case then is, was there a mistake on the part of the plaintiff in reference to the kind of guarantee which the defendant was to give? or did he know when he received the assignment and guarantee that

it was not the instrument that the defendant had agreed and intended to give.

Personally, the plaintiff had no negotiation with the defendant concerning the trade. He had authorized his agent to exchange the colt for the mortgage with the defendant's guarantee of payment. It does not appear that Baldwin ever communicated to him the refusal of defendant to give the guarantee required or the offer to give a guarantee of collection only. When the guarantee of payment was handed him by Baldwin, he did not know of any intention on the part of the defendant to give a guarantee of collection. There was therefore, no knowledge on the part of the plaintiff of any mistake; on the other hand, the defendant had sent to him the guarantee he required, and it was in conformity with the bargain as he understood it to be, and intended it should be made.

Unless therefore, the knowledge of Baldwin, that the defendant did not mean to give a guarantee of payment, binds the plaintiff, there was no such mutual mistake as entitles the defendant to relief.

It is necessary, in order to determine this question, to ascertain precisely the relation which B. occupied to the parties in effecting the trade.

The plaintiff and B. are the only persons who speak as to the interview between them, when plaintiff informed B. of the terms on which he would sell the colt. We must look to their evidence for the powers, if any, given B. to act for plaintiff.

The plaintiff says: "I told B, I would trade horse for $75, and I would take the mortgage, if he would make it $75, and Mrs. Lewis should guarantee payment instead of collection; that I would take it on no other condition; I would not be bothered collecting it; when it came due, I would call on her. He (B.) said, he thought he could make the trade." On cross examination he says: "I told B. how I would trade, I did not direct him to carry the proposition

to any one. He said he thought he could make the trade."

Baldwin testifies : "I was acting for both parties in making the trade, I made trade for mortgage; I bought mortgage for Mills, had talk with plaintiff before going to see defendant about this trade; plaintiff first suggested the trade to me; plaintiffs proposition was for me to sell colt to them (meaning defendants family); as they had no horse, and he would take the mortgage if she would guarantee it; I told him I did not think mortgage good for anything. He said he did not care, he would take it if she would gaurantee it and pay the difference. I told him I would see her and I did. Think plaintiff talked of guarantee of payment or collection but cannot tell which he said. Talked generally about guaranteeing. Plaintiff talked of guaranteeing the mortgage, sometimes the payment—sometimes the collection, plaintiff wanted me to aid him in selling the horse."

Baldwin's recollections as to the kind of guarantee plaintiff required, is not clear—plaintiff swears positively, he told B. he must have a guarantee of payment, and if B's opinion that the mortgage was good for nothing was correct, the probability is, that plaintiff required, as he swears he did, a guarantee of payment. It would be difficult to find a reason for his taking such a mortgage with a guarantee of collection. For these reasons I have found as matter of fact that plaintiff instructed B. that he would not take the mortgage, unless payment was guaranteed.

What under these circumstances and upon this evidence was the power conferred by plaintiff on Baldwin ?

The plaintiff had fixed the price at either $75 or $85 and it is not certain which nor is it material. He had agreed to accept the morgage and had designated the guarantee he must have. He made it a condition of the trade, that he should have the use of the horse for a while after the completion of the trade.

Baldwin, if he is to be treated as agent of the plaintiff, was acting under special instructions—authorized to complete a sale upon terms specifically defined. All that B. had to do was to carry the plaintiff's proposition to the defendant and if accepted, the sale was complete. If not accepted, then the power of B. to .sell the horse was terminated. There was no discretion whatever, vested in B.

When therefore, the defendant refused to give the guarantee of payment, the power of the agent terminated. If the defendant proposed new and different terms, it was the duty of the agent to submit those terms to the plaintiff for acceptance or rejection, and until accepted there could be no bargain made that bound the plaintiff. It would seem from the evidence of the witnesses .that B. did not inform the defendant that she must give a guarantee of payment,or plaintiff would not trade, on the contrary, it would seem to have been left discretionary with the defenaant to give whichever form of guarantee she should deem proper, and she elected to give one of collection and so informed the agent. He was present when the instructions were given for drawing the guarantee, and when it was drawn and signed he received it as, and supposed it to be, a guarantee of collection.

B. was a special agent acting under specific instructions, and it was the duty of the defendant to ascertain the nature and extent of the authority, and she dealt with him therefore at the peril of having the agents contract repudiated if it turned out that he had exceeded his powers. (*Story on Agency*, § 126, 127,*and notes;Paley on Agency*,202 *and notes; Batty* agt. *Carswell*, 2 *J. R.*, 48; *Nixon* agt. *Palmer*, 4 *Sold.*, 398; *Scott* agt. *McGrath*, 7 *Barb.*, 53).

I do not think the plaintiff would have been bound by the acceptance by the agent (if B. can be considered as such) of a guarantee of collection if one had been given to him, unless the principal had accepted it when offered to him. The guarantee offered, was the one he required—he

accepted it without notice of any mistake on the part of the defendant, and there clearly was none on his own part. This not being a case of mutual mistake, and the plaintiff being free from any imputation of fraud, the question is, is the defendant entitled to any relief, and if any, to what kind and measure of relief is she entitled.

That she has executed an obligation that she did not intend to execute is established. But it was through the mistake of her agent, the scrivner, that the wrong was done her; the plaintiff got only what he required to be given and B. was not authorized to accept anything else. The result then is, that there never was a meeting of the minds of the parties as to the sale, and it was competent for the defendant to return the colt and rescind the contract, and this was, I apprehend, the only relief to which she is entitled.

There is no ground laid by the proofs for reforming the instrument, and the defendant has not done that which alone can entitle her to rescind the contract. She cannot retain the horse and defeat a recovery, on the ground of mistake, on an obligation made and delivered by herself in payment of the horse, and which is the identical obligation that plaintiff required to be delivered to him.

I therefore, order judgment for the plaintiff for the amount remaining due on the mortgage and interest, but not until the guarantee is properly stamped, which the plaintiff is permitted to do.