# Cases

# FOURTH DEPARTMENT,

AT

# GENERAL TERM,

## October, 1883.

---

OTIS KNAPP, as Administrator, etc., of RILEY KNAPP, Deceased, Respondent, v. JEREMIAH FOWLER, Appellant.

*Rescission of contract of sale, for fraud or mistake — power of a referee to allow amendments to a complaint — Code of Civil Procedure, sec. 1018 — when a transaction constitutes a sale and not an exchange of property — presumption that every person knows the law.*

This action was brought by the plaintiff's intestate to rescind a conveyance of real estate made by him to the defendant. The real estate was sold January 18, 1881, at the price of $3,000, the vendor taking in payment thereof a bond and mortgage for that amount, given to the defendant by one Brown, the whole principal sum secured thereby being then unpaid, together with some interest, which latter amount was paid by the intestate to the defendant. The complaint alleged that the intestate was induced to take the said bond and mortgage by certain false representations fraudulently made by the defendant, respecting the pecuniary responsibility of the mortgagor and the property owned by him and the value of the mortgaged property. The referee found the misrepresentations to have been substantially as alleged, but found that they were not fraudulently made, but that the defendant as well as the intestate believed them to be true when made, and that there was a mutual mistake of facts which entitled the intestate to a rescission. Instead of ordering a judgment to that effect, he made a report allowing the intestate to amend, subject to the approval of the court, and ordered a conditional judgment in his favor. This report was set aside by the General Term, and the case sent back to the referee for an unconditional determination. The parties having appeared before the referee, he allowed the plaintiff to amend the complaint so as to base his

action on mistake instead of on fraud, received such evidence as was offered, and ordered a judgment in the plaintiff's favor.

*Held,* that the referee had power to allow the plaintiff to amend the complaint, and that he did not err in allowing the amendment to be made under the circumstances of this case.

That the legal effect of the transaction upon which the action was brought, so far as the rights of the parties in respect to a rescission of the contract were concerned, was precisely the same, whether the defendant's misrepresentations were made honestly or dishonestly.

That the failure of the plaintiff to explain why he alleged fraud, and omitted to claim relief on the ground of mistake until after his defeat on the issue tendered by him, did not render the allowance of the amendment improper. The old chancery rules requiring such an explanation to be given, have been done away with.

It was claimed that the intestate was guilty of negligence in failing to examine the records in the county clerk's office, which would have shown that an execution issued upon a judgment recovered against Brown, the mortgagor, had been returned unsatisfied a few months before the sale.

*Held,* that as it appeared that the defendant had asserted in positive terms that Brown was good, and that the mortgage was "good as gold," it did not lie in his mouth to say that the intestate was required, in the exercise of due diligence, to make such an examination of the records.

That the agreement was for a sale and not for an exchange of specific articles of personal property, and that as the bond and mortgage were taken in payment of the purchase-price of the land, a misrepresentation or mistake as to their value, authorized a rescission of the contract.

The defendant claimed that he, being satisfied that the plaintiff could not succeed on the ground of fraud, suffered the property covered by the Brown mortgage to be sold upon the foreclosure of a prior mortgage, before the plaintiff moved to amend his complaint, and that the application should have been denied for that reason.

*Held,* that the claim was untenable, because :

*First.* It appeared that prior to the said sale the defendant's attorney and his son had been told by the referee that he had concluded to decide for the plaintiff upon the ground of mistake.

*Second.* That as the defendant knew that a mutual mistake existed in his case, and as every person is presumed to know the law, he was chargeable with knowledge of the fact that a judgment could properly be rendered against him upon that ground.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*John Cunneen,* for the appellant.

*George Bullard,* for the respondent.

SMITH, P. J.:

The action is brought to rescind a conveyance of real estate made by the plaintiff's intestate, Riley Knapp, to the defendant. The action was begun in the name of Riley Knapp, and he having died since the trial, the present plaintiff has been substituted in his place.

The real estate was sold 18th January, 1881, at the price of $3,000, and the vendor took in payment a bond and mortgage executed to the defendant by Luther Brown for $3,000, dated 6th of May, 1876, payable seven years from date with interest, annually, on which was unpaid at the time when it was transferred to the intestate the whole principal sum and $157.33 interest, for which latter sum the intestate gave his note to the defendant, which he afterwards paid.

The original complaint alleged that the intestate was induced to take said bond and mortgage by certain false representations, fraudulently made by the defendant, respecting the pecuniary responsibility of the mortgagor and the property owned by him, and the value of the property covered by the mortgage. The referee found the misrepresentations substantially as alleged, but instead of finding that they were made fraudulently, he found that the defendant, as well as the intestate, believed them to be true when made, and that there was a mutual mistake of facts, and on that ground he held that the intestate was entitled to a rescission.

Instead, however, of ordering a judgment to that effect, he reported that the plaintiff was entitled to amend his complaint by conforming it to the facts found as above stated, upon terms specified in the report, provided that on application to the court, on notice, such amendment should be approved and confirmed, and if confirmed in the same or a modified form, the plaintiff should then be entitled to enter a judgment rescinding the sale on the terms stated in the report, but no judgment was directed in case the report should not be confirmed.

Upon that report the plaintiff moved at Special Term, on notice, to confirm the report and for leave to amend the complaint by alleging a mutual mistake instead of fraud. The motion to confirm was denied, but the motion to amend was granted on payment of costs, and a new trial was ordered before another referee. The defendant appealed from that order and the General Term reversed

it and sent the case back to the referee to determine the same unconditionally, and to order such judgment as he should deem proper after a further hearing. (26 Hun, 200.)

In pursuance of that order the parties voluntarily appeared before the referee, who then, after hearing both sides, permitted the plaintiff to amend his complaint in the particulars above stated, which he did accordingly. Thereupon the referee heard such further proofs as the parties offered, and made his report by which he found a mutual mistake, as alleged in the amended complaint, and held that the plaintiff was entitled to a judgment of rescission on that ground. From that judgment this appeal is taken.

The counsel for the appellant contends that the referee erred in hearing and determining the motion for leave to amend, inasmuch as the cause had then been submitted and the issue decided, and his jurisdiction of the parties and of the cause was exhausted. That position is faulty in assuming that the referee had determined the issue as directed by the order of reference. He had made simply a conditional disposition of the cause upon which no judgment could be entered, and the effect of the order of the General Term remitting the case to him was to continue his powers as a referee in full force.

We entertain no doubt that the amendment was one which the referee had power to permit to be made. The power of a referee in that respect, upon the trial, is now co-extensive with that of the court (Code of Civil Proc., § 1018), and the court may allow any amendment of a pleading by conforming it to the proof which does not change substantially the claim or defense. (Id., § 723). In this case the claim for relief is not changed, and the legal effect of the transaction upon which the suit is brought (so far as the rights of the parties in respect to a rescission of the contract are concerned) is precisely the same whether the defendant's misrepresentations were made honestly or dishonestly. The original complaint averred in substance that the plaintiff acted under a mistake by alleging that he relied upon the misrepresentations made by the defendant, and was induced by them to act. That fact entitled him to a rescission whether the defendant, in making the misrepresentations, participated in the mistake or intended to deceive. When the defendant testified, as he did, that he supposed the mortgage

was "first class," that he "traded on that basis," and that he and the plaintiff "had the same idea about it," he established the fact of a mutual mistake, and the right of the plaintiff to the relief demanded in his complaint was clear.

It would be a reproach to the administration of justice to hold that the liberal power of amendment recognized by the Code does not extend to such a case. The prime object of a pleading is to inform the adverse party of the claim made against him. That being done, he may object to proof of a substantially different claim. And if, under the issue made, competent evidence is received, which presents another issue not made by the pleadings, it cannot be used upon the latter issue, against the adverse party, even if he does not object to its reception. (*Williams* v. *The Mechanics and Traders' Fire Ins. Co.*, 54 N. Y., 577; *Bruce* v. *Burr*, 67 id., 237.) But where the adverse party, himself, gives evidence of a fact not alleged in the pleading, which establishes a right to the identical relief claimed against him, neither justice nor common sense requires that he shall be heard to object that the evidence cannot be used for that purpose. We think the case is eminently one for the exercise of the power of amendment (*Smith* v. *Mackin*, 4 Lans., 41), and that if the learned 'referee had, in the first instance, directed an amendment of the complaint to conform it to the proof, and thereupon had ordered an absolute judgment for the relief asked, upon the ground of mistake, his action would have been warranted.

These views do not conflict with any adjudged case to which our attention has been called. Most of the cases cited by the appellant's counsel were actions at law in which it was held that under a complaint in tort the plaintiff could not recover on contract, or *vice versa*. Those cases have no application to the one in hand.

The appellant's counsel insists that the plaintiff not having explained why he alleged fraud, and omitted to claim relief on the ground of mistake till after his defeat on the issue tendered by him, the amendment should not have been allowed. The counsel relies upon certain rules of practice of the old Court of Chancery. It was held by the chancellor that the plaintiff would not be allowed to amend his bill, after replication, without leave granted on proof showing the materiality of the amendment and the reason why it was not stated before (*Thorn* v. *Germand*, 4 Johns. Ch.,

363), or to amend so as to make a new case after proofs closed. (*Dodd* v. *Astor*, 2 Barb. Ch., 395.) But those rules. have been done away and the practice in regard to amendments is now a matter of discretion, depending upon the circumstances of each case within the limitations prescribed by the Code.

The appellant's counsel attacks the judgment on the merits upon several grounds. He insists that the plaintiff's intestate was precluded from recovering by his negligence. This position is based upon the fact that the records of the county clerk's office furnished evidence of Brown's insolvency, an execution upon a judgment against him having been returned unsatisfied a few months before the sale, and the plaintiff by examining the records might have ascertained that fact. It does not lie in the mouth of the defendant to say that the intestate was required, in the exercise of due diligence, to consult the records for the purpose of ascertaining Brown's pecuniary condition. The evidence on the part of the plaintiff tends to show that the defendant asserted in positive terms that Brown was "good" and that the mortgage was "good as gold." Contributory negligence will defeat an action based on negligence, and there may be cases where clear negligence on the part of a purchaser, to inform himself as to the quality or condition of the thing purchased, will constitute a defense to an action against the vendor for fraud (*Long* v. *Warren*, 68 N. Y., 431); but we are not aware of any adjudication in this State in which that rule has been applied to a case of misrepresentation and mistake. On the contrary, there are numerous cases in the books in which a mutual mistake, or a mistake on the one part and fraud on the other, has been relieved against, where the party seeking relief fell into the mistake by omitting to read a written instrument which was at hand and might have been examined by him. (*Welles* v. *Yates*, 44 N. Y., 525; *Botsford* v. *McLean*, 45 Barb., 478; affirmed by Court of Appeals, May, 1870; *Rider* v. *Powell*, 28 N. Y., 310; *Kilmer* v. *Smith*, 77 id., 226; *Albany City Savings Institution* v. *Burdick*, 87 id., 40.) The cases cited by the appellant's counsel are inapplicable to the case in hand. In *Penny* v. *Martin* (4 Johns. Ch., 566) the bill was dismissed because the embarrassment from which the plaintiffs sought to be relieved was the result of their ignorance founded on negligence, and not on "accident, mistake. misrepre-

sentation or fraud." In *Marvin* v. *Bennett* (26 Wend., 169) the plaintiff alleged that the defendant had misrepresentèd the quantity of a piece of land sold and conveyed by him to the plaintiff. The trial judge held that there was neither fraud or mistake, but that the vendee took the risk as to the quantity of the land, and his decision was affirmed. In *Stettheimer* v. *Killip* (75 N. Y., 282), it was found that there was neither fraud or mistake, but merely a dispute as to the amount of the profits made by the firm, each party having a full opportunity of knowing the facts. In *Grymes* v. *Sanders* (93 U. S., 55), it was said there was no mutual mistake, and the opinion was expressed that in case of mistake, the party complaining must have exercised at least ordinary diligence. In *Whittemore* v. *Farrington* (76 N. Y., 452) there was neither fraud or misrepresentation. We are of the opinion that the position of the appellant's counsel, that the plaintiff is precluded from recovering in this case, by negligence on the part of his intestate cannot be maintained.

It is contended by the appellant's counsel that there can be no recovery, for the reason that the transaction was an exchange of one property for another, in which the intestate received what he bargained for. The intestate sold his land at the price of $3,000, and the bond and mortgage were turned out to and received by him as equivalent to $3,000 in money, he paying back the apparent difference. Both parties supposed the securities were worth the sum at which they were rated, and the defendant so represented them. The intestate relied upon those representations, and did not take the securities at his own risk. These facts distinguish the case from the one supposed by COMSTOCK, J., as the basis of the opinion expressed by him in *Des Arts* v. *Leggett* (16 N. Y., 582, 589), and bring it within the rule laid down in *Leger* v. *Bonnaffe* (2 Barb., 480), cited approvingly in *Roberts* v. *Fisher* (43 N. Y., 159); see, also, *Roget* v. *Merritt* (2 Caines' R., 117); *Lightbody* v. *Ontario Bank* (11 Wend., 1), and *Benedict* v. *Field* (16 N. Y., 595).

Again, it is urged that the mistake was as to an extrinsic fact, and for that reason the suit cannot be maintained. If we understand the argument of the counsel on this point, it is that as the bond and mortgage turned out were the identical securities for which

the intestate bargained, there was no mistake as to any fact intrinsic to the contract, and Brown's ability to pay was an extrinsic fact. But the goodness of the securities was a fact asserted by the defendant, and believed by the plaintiff upon such assertion, and if the plaintiff had not supposed it to exist, he would not have accepted the bond and mortgage. If the argument of the appellant's counsel is sound, it would apply with equal force to the case of a payment in counterfeit bank notes or the notes of an insolvent. The only case cited by the appellant's counsel, *Dambmann* v. *Schulting* (75 N. Y., 55), is distinguishable from this. There was no misrepresentation, and the creditor who executed the release of his debt, on receiving fifty per cent thereof, made no inquiries as to the then pecuniary condition of his debtor. It seems that subsequently to the time when the plaintiff had been informed of the defendant's circumstances the pecuniary condition of the defendant had improved, and the plaintiff testified that if he had known the defendant's financial condition he would not have executed the release. The court held that as the release executed was just what was intended, and the sum paid was the sum agreed upon, there was no mistake of any intrinsic fact essential to the contract or involved therein, and that although the plaintiff's action might have been influenced by the defendant's financial condition, if he had known it, yet such condition was an extrinsic fact, and for that reason relief could not be granted on the ground of mistake. It was held that the debtor was in no way responsible for the ignorance of the creditor, and was under no legal or equitable obligation to disclose the facts as to his pecuniary circumstances. The precise ground upon which he was held to be exempt from such obligation was very distinctly stated when the case was before the court upon a subsequent appeal. (85 N. Y., 622.) If the $5,000 had been paid in worthless securities, which the debtor represented to be good, the case would have been analogous to this in its facts. The cases cited by Mr. Justice EARL in Dambmann's case, as illustrations of mistakes respecting intrinsic facts essential to contracts against which courts of equity will relieve, are more nearly analogous to this than is the principal case.

Again, it is urged that the plaintiff should fail by reason of laches. There was no laches on the part of the intestate. He

promptly offered to rescind on learning that the bond and mortgage were worthless, and on being refused he brought suit without unreasonable delay. The defendant complains that he, being satisfied that the plaintiff could not succeed on the ground of fraud, suffered the property covered by the Brown mortgage to be sold upon a prior mortgage, before the plaintiff moved to amend his complaint. But the affidavits read on the part of the defendant in opposition to the motion to amend, show that shortly prior to the mortgage sale, the defendant's attorney, and also his son, who was active in the defendant's behalf in the whole transaction, had been informed by the referee, in reply to a request for information in that respect, that he had concluded to decide in favor of the plaintiff upon the ground of mistake. Besides, the defendant knew that the fact of a mutual mistake existed in the case, and that it appeared from his own testimony on the trial, and as every man is presumed to know the law, he is chargeable with knowledge that judgment could properly be rendered against him on that ground.

The objection urged to the testimony of the witness Weaver, as to the statement made to him by the defendant's witness Benjamin Fowler, is not available to the appellant, for the reason that the objection and exception noted in the appeal book do not appear to have been taken until after the testimony was out. The matter is of but little moment, as the testimony, unless it was wholly collateral, tended to discredit the witness by contradicting him, the foundation having been laid for it. Besides, the only fact which the testimony tended to establish was that Brown was represented to the intestate, to be good, in the negotiations which led to the sale, and that fact was satisfactorily established by other evidence, so that the testimony in question, if improper, was harmless.

The testimony offered by the defendant to show that the foreclosure of the prior mortgage on the Brown property was gotten up by Brown and his son in fraud of Brown's creditors was properly excluded. That issue could not be tried in this action.

Our conclusion is that the judgment should be affirmed, **with costs.**

HARDIN and BARKER, JJ., concurred.

Judgment and order affirmed, with costs.