### PRINGLE *a.* CHAMBERS.

*Supreme Court, First District; General Term, November,* 1854.

#### ALTERATIONS IN AGREEMENT.—BURDEN OF PROOF.

It is a question of fact which should be submitted to the jury, whether material alterations appearing upon the face of an instrument containing an agreement *inter partes*, were made before or after its execution.

An admission by one of two plaintiffs, embodied in his agreement with a third party, to the effect that the note now in suit was void,—*held* admissible in favor of the present defendant.

Appeal from judgment upon a verdict.

The plaintiffs, against whom judgment was rendered at circuit, appealed upon exceptions to the rulings of the court, allowing two written agreements, in one of which there was a material alteration, and the other of which was made between one of the plaintiffs and a third person, to be given in evidence by the defendant. There were also other exceptions

Pringle *a.* Chambers.

raising no important points of practice. The facts involved, sufficiently appear, in the opinion of the court.

*J. E. Burrill, jr.*, for plaintiff. I. The alteration in the agreement No. 1, was material, and beneficial to the defendant. The defendant was bound in some manner to explain or account for the alteration, and in the absence of such explanation, the evidence should have been rejected. Acker *v.* Ledyard, 8 *Barb.* 516; Tillou *v.* The Clinton and Essex Insurance Company, 7 *Barb.* 568; Jackson *v.* Osborn, 2 *Wend.*, 555; Waring *v.* Smyth, 2 *Barb. Ch. R.*, 123 n. Herrick *v.* Malen, 22 *Wend.*, 388; Knight *v.* Clements, 8 *Ad. & E.*, 215; Henman *v.* Dickinson, 5 *Bing.* 183; Jackson *v.* Jacobi, 9 *Cow.* 128; Cooper *v.* Becket, 4 *Moore, P. P. C.* 419; Van Buren *v.* Cockburn, 14, *Barb.* 122.

II. The court erred in admitting the agreement of Jacob Pringle, No. 4, because there was no proof that it was entered into by J. L. Chambers, for the benefit of the defendant, and it could not inure to the benefit of defendant to defeat this action, and because there was no proof of any authority to Jacob Pringle to bind John P. Pringle under seal.

*Loomis, Thayer & Smith*, attorneys for defendant.—I. No proof was offered showing when the alteration was made; and if the court was allowed in the absence of proof to indulge in any presumption as to the time of the alteration, the rule which requires all presumptions to be in favor of innocence and validity, required the court to declare that the alteration was antecedent to, or cotemporaneous with the execution. (1 *Greenl. Ev.* 678, § 564; U. S. *v.* Spalding, 2 *Mason*, 478; Jackson *v.* Osborn, 2 *Wend.* 556; Jackson *v.* Malin 15, *Johns.* 296.

II. The agreement of Jacob Pringle was admissible, if not as an agreement, certainly as an *admission* that the notes were null and void.

CLERKE, J.—This was an action on an agreement given by defendant, on the assignment of a purchase of a patent right, promising to pay five hundred dollars in nine months, and one thousand dollars in twelve months, after date; payment being contingent on his continuing to manufacture and vend the machine to which the patent right related.

By an agreement of the same date, signed by all the parties, it was provided that if the defendant should find the business of manufacturing, vending and selling this machine unprofitable, he might duly notify the plaintiffs in writing, either in person or by a written notice, directed and duly mailed to Sumner Hill Post-Office, Pa., stating that he intended to cancel and surrender and give over the articles thereto annexed; upon which the same should be null and void, provided the notice should be given within nine months.

This action is for the first amount of $500, giving credit for $5 to defendant; the demand of judgment being $495, with interest from August 1, 1850.

The defendant proved a notice mailed and deposited in the Post-Office on the 6th of April, 1850, directed to the plaintiffs, at Sumner Hill Post-Office, Pa., notifying the plaintiffs, in compliance with the agreement, that the manufacturing of the machine was unprofitable, and that he ceased to manufacture and vend it; requesting the plaintiffs to annul the articles of agreement.

In support further of the defence, an agreement relating also to the matters, dated 1st of August, 1850, and marked Exhibit No. 1, was introduced, signed by Jacob Pringle, at the end of which, and after the words "in witness whereof I hereunto set my hand and seal," were added the words "*and I further agree to return the obligation of said Chambers, dated Oct.* 30, '49, *at* 9 *and* 12 *mos., for* $1,500; *all of which is null and void.*"

Another paper was also introduced by defendant, dated July 5, 1850, and marked Exhibit No. 4, signed Jacob Pringle, acknowledging the receipt of thirty-seven dollars from J. L. Chambers, (not the defendant), which sum Pringle binds himself to use in and for the construction of this machine, to be completed before the 20th July, and to refund thirty-five dollars to said Chambers, in case he should refuse to receive the machine; and then adding, beginning the word *also* with a small letter: "also, I obligate myself to refund and return Mr. Chambers' (the defendant,) notes dated 30th October, 1849, one at 9 months for $500, and one at 12 months, for $1,000, being null and void.

The last two papers were introduced in confirmation of

the sufficiency of the notice, and to show that Jacob Pringle considered the agreement or note on which this action was brought, to have been cancelled by the notice, pursuant to the terms of the first agreement.

I. The plaintiff's counsel objected to the introduction of the paper, on the ground that it was apparent on the face of the paper that it had been altered since it was executed and delivered. The judge at the trial overruled the objection, leaving the question to the jury as to the time when the alteration was made.

The counsel, certainly, demanded more by this objection than I have noticed in any books of modern authority, with the exception of the legal novel called *Ten Thousand a Year*, written by Mr. Warren, in which Lord Widdrington, in the fictitious case of "Doe on the Demise of Titmouse against Jolter," is described as refusing to receive a deed in evidence, because it had an erasure in a material part of it; and so the real defendant, Aubrey, lost ten thousand a year, and his position in society.

By this objection the counsel did not, either in the case of Doe *v.* Jolter, or of Pringle *v.* Chambers, ask the court to charge the jury that the defendant was bound in some manner to explain or account for the alteration, but that the question should not go to the jury at all. Where there are erasures or interlineations, or very material alterations appearing on the face of an instrument, it becomes a question of fact for the jury whether they were made before or after execution; and, as Mr. Evans, in his edition of Pothier, says:—" The decision of that question will in a great measure depend upon the circumstances of each individual case," and it is a salutary rule which I think our courts generally are disposed to adopt, though as yet not with perfect unanimity, that where the alteration appears to be suspicious on its face, and is not duly noted, the *onus* lies with the party who claims that the alteration was genuine. But nothing of this kind was required by the plaintiff's counsel. Both in his objection to the admissibility of the instrument, in the first instance, and his request how the judge should charge the jury, he insisted that the sufficiency as well as the admissibility of the instrument were

exclusively for the court. The judge left it with the jury to say when the alteration was made, and stated to them, if it was made after the delivery, it could have no effect. This ruling was perfectly correct, although it is not precisely in keeping with the decision of Lord Widdrington on the important occasion to which I have referred, in a case described by one who is not only celebrated as a writer of many interesting fictions, but also as the author of some useful elementary legal works.

II. Was the defendant obliged to show that the business of manufacturing and vending the machine was unprofitable in fact;—did the *onus* to do so lay upon him, so that he must show it before he could claim the benefit of that part of the agreement providing for giving the notice and rescinding the contract?

The court charged the jury that if the written notice was sent as testified by the witness, that annulled the contract as to the defendant. In the absence of any proof on the part of the plaintiffs showing that the business was profitable, this was correct. The agreement left it to the defendant to determine whether the manufacture was profitable or not; and this was safe for all parties, for it may be taken for granted that the defendant would not relinquish the right if he found it profitable. The plaintiffs might have been permitted to show that the statement in the notice was untrue, but he gave no evidence on the subject, and the jury have nothing to do but to decide upon the sufficiency of the notice itself, corroborated by exhibits No. 1 and No. 4, both of which, as I have already intimated, were introduced for this purpose. They were introduced rather as admissions than as agreements. The paper (Exhibit No. 4), dated July 5, 1850, is a paper with which the defendant has directly nothing to do. It certainly does not amount to an agreement between him and Jacob Pringle; but that is no reason why a certain statement in it is not effectual as an admission against Pringle, made against his own interest, used as evidence in favor of the defendant.

If the evidence offered by the plaintiff had been admitted by the court, it might have shown that the defendant manufactured the machine after he sent the notice cancelling the agreement, but this could have no effect in determining whether

the agreement was actually cancelled or not. It could have no tendency to show whether the manufacture was profitable or unprofitable at the time the notice was sent. Neither could it have shown a waiver; there could have been no waiver in the proper sense of the term after the notice and the acquiescence of the plaintiff as proved; there could only be a renewal of the agreement; and if this restored the parties to their original rights and liabilities, it should have been proved. No offer was made to prove anything of the kind, and the court properly refused to receive the testimony.

The judgment should be affirmed with costs.