NEAL O'DONNELL AND ANOTHER *v.* PHILIP C. HARMON AND
OTHERS.

To authorize a court of equity to reform a contract on the ground of mistake, it
must appear that the mistake complained of was mutual, or was the mistake of
one party with the fraudulent concealment of the other.

Where an alteration in a contract appears to be suspicious on its face, and is not
duly noted on the paper, the burden of proof is upon the party who claims that
the alteration was genuine.

The defendants executed and delivered to the plaintiffs a lease, by which it was
provided that if, "during January next preceding the expiration of the term
(which would be January, 1867), the lessees should give notice of their desire
to purchase the premises, the lessors would sell the premises at the expiration
of the term (May 1, 1867) for $10,800, and, on receiving said money, would, on
*May* 1, 1866, convey to the lessees." In an action brought by the lessees to
reform the lease, it appeared that the last-mentioned date had been originally
written "1867" and altered to "1866." *Held,* upon appeal, that the finding of
the Judge below that the omission to alter the clause in reference to the giving
of notice of intention to purchase, was caused by mutual mistake of the parties,
being supported by satisfactory evidence, was correct, and the defendants hav-
ing shown that the alteration was made at the time of execution, although
not noted, the judgment should be affirmed.

APPEAL from a judgment entered upon the decision of a
Judge at the Equity Term.

The action was brought to reform a lease containing an
agreement to sell the leased premises upon the lessees giving·
notice of their intention to purchase at a fixed period. The
facts are fully stated in the opinion of the Court. .

*Thomas H. Hurley* and *John E. Burrill,* for appellants.

*Marsh & Wallis,* for respondents.

BY THE COURT.*—LARREMORE, J.—This action was brought
to reform a contract for the sale of real estate, and also for the·
specific performance thereof.

---

* Present—Daly, C. J., Larremore and Loew, JJ.

By a lease dated May 1, 1863, the defendants demised to the plaintiffs three lots in Henry street, for the term of four years, at a rent and upon the terms therein specified. The lease contained the following provision :

" And if during the month of January next preceding the expiration of the term hereby granted, the said parties of the second part (the plaintiffs) shall notify the said parties of the first part (the defendants) in writing of their desire to purchase the said above described and hereby demised premises ; that at the expiration of the term hereby granted, they, the said parties of the first part (the defendants), will sell and convey the said premises to the said parties of the second part (the plaintiffs) for the price or sum of $10,800, and, upon receiving said sum of money, will, on the first day of May, in the year eighteen hundred and sixty-six, make, execute, and deliver to the said parties of the second part, a good and sufficient deed, &c."

The plaintiffs entered into possession of the premises, in pursuance of said lease, and occupied the same during the term thereof.

In January, 1867, the plaintiffs gave defendants the notice of intention to purchase required by said lease, and in April, and also on May 1, 1867, tendered the sum of $10,800, and demanded a deed of said premises, which the defendants refused to deliver.

After the expiration of the term, summary proceedings were taken by the defendants to dispossess the plaintiffs, whereupon this action was commenced by them, and an injunction was granted restraining such dispossession.

The plaintiffs claim that at the time of the execution of the lease, the date "May 1, 1866," when the deed was to be delivered, was "1867," and that it had been altered subsequently to the execution of the lease; that the plaintiffs, at the time of such execution, believed and supposed the said date to have been May 1, 1867, which was, as they alleged, in accordance with the contract between the parties. They asked the Court to reform and correct the lease in this particular, and to compel the defendants to perform the contract.

The defendants claim that such alteration was made before

the execution of the lease, and with the consent of the plaintiffs, and that by mistake the first part of the clause was omitted to be altered as was intended, so as to make it read, that the notice should be given in the January next preceding the expiration of the third year of the term instead of "next preceding the expiration of the term," and ask to have the lease reformed in this respect.

The cause was tried before the Court, without a jury, and judgment rendered therein for the defendants, dismissing the complaint on the merits, and directing that the lease be reformed as prayed for by the defendants.

The Judge before whom the action was tried, found, as matters of fact, that said alteration from 1867 to 1866, was made before the execution of the lease, and with consent of the parties, and that through mistake and inadvertence, the time during which the plaintiffs were to give notice of their desire to purchase the premises, as stated in the lease, was not changed therein, but it was the intention of all the parties that the notice should be given in the month of January, 1866, and that the lease should be made to express the agreement.

If these findings are supported by the evidence in this case, the judgment will not be disturbed on appeal, unless the exceptions of the plaintiffs' counsel to the judge's rulings are sustained.

Only one witness (Hugh O'Donnell) gave direct positive evidence for the plaintiffs on this point. He swears that "it was seven when I wrote my name there; it was not altered in my presence; I know nothing of it at all." The other plaintiff (Neal O'Donnell) never read the lease, and knew nothing of its contents, except what Hugh told him.

On the part of the defendants, three witnesses testify that the alteration was agreed to by the parties and was made before the execution of the lease. The weight of evidence was therefore clearly in favor of the defendants, and fully justified the finding of the judge below.

If this theory be correct, then the right of the plaintiffs to reform the lease utterly fails, and the necessity of the reformation as claimed by the defendants becomes apparent.

If the time fixed by the lease for the delivery of the deed of the premises was limited by the terms thereof to May 1st, 1866, then the clause in the lease, extending the time of giving notice of the election to purchase " *during the month of January* next preceding the expiration of the term," was meaningless and of no effect. Such election should precede, not follow the delivery of the deed. And if, as appears from the findings, that it was the intention of all the parties, that said notice should be given in the month of January, 1866, but through mistake and inadvertence the same was not changed in the lease at the time of its execution, then the defendants are entitled to a reformation of the lease in this respect, unless the same be prohibited by law.

To authorize a Court of Equity to reform a contract on the ground of mistake, it must appear that the mistake complained of was mutual, or was the mistake of one, with the fraudulent concealment of the other. (1 Story's Equity Juris.147 to 148.)

It must appear " that the material stipulation to be omitted or inserted in the instrument was omitted or inserted contrary to the intention of both parties."

If the mistake is admitted, the court would reform the instrument. And if it should be proved by other evidence, entirely satisfactory and equivalent to an admission, the reasons for relief would seem to be equally cogent and conclusive. (1 Story's Eq. Juris. 154.)

In the case of *Lyman* v. *The United Ins. Co.*, (17 Johns, 373), Chief Justice Spencer says, " It must· be shown, incontrovertibly that both parties understood the contract, as it is alleged it ought to have been, and in fact was, but for the mistake."

If the plaintiffs then have shown a plain mistake, clearly made out by evidence, satisfactory and free from all reasonable doubt, they are entitled to the relief sought.

The plaintiffs charge that the alteration was intentional and fraudulent on the part of the defendants, and after the execution of the paper. The alteration appears to have been made without any attempt at concealment, and in such a manner as to invite attention and inspection.

After its execution by the defendants and the plaintiff Hugh O'Donnell, the lease was left with the attorney of the defendants, not at their request, but for the convenience of the plaintiff Neal O'Donnell, who executed it at a subsequent time, when the duplicates were respectively delivered to the parties. The defendants never had possession of the plaintiffs' duplicate after its execution by them, nor of their own, until after Neal O'Donnell signed it, so that the alteration if made, as alleged by the plaintiffs, was made by Wallis or with his knowledge. To sustain the plaintiffs upon this point, we must reject the positive evidence of three unimpeached witnesses, and virtually convict one of them of the commission of a felony. This we are not prepared to do. The learned judge who tried the cause has found the facts which fully authorized the reformation of this lease, that the omission to alter the clause therein, in reference to the giving of notice of intention to purchase, was caused by a mutual mistake of the parties, and such fact being supported by competent and satisfactory proof, the judgment thereon will not be disturbed on appeal.

The authorities referred to by plaintiffs' counsel do not conflict with this theory. In the case of *Arthur* v. *Arthur* (10 Barb. 9), where a testator devised his farm to several children in undivided shares, and subsequently conveyed to one of them a part of the land so devised by a deed which made no mention of the will, it was held that such conveyance was no bar to the devise, even though the mistake was mutual as to the effect of the deed, which was intended to convey the same share to which the said child was entitled as devisee. Where the parties make just such instruments as they intend to make, and without fraud, surprise, undue influence, or mistake of their rights, but labor under an error as to the mere legal effect of the instrument, that alone will not authorize a correction by the court.

A will cannot be reformed because the testator misapprehended its effect.

*Nevins* v. *Dunlap*, (33 N. Y. 680), was an action upon a bond, in which the plaintiff claimed $6,000 and interest, and prayed, if necessary, that the said bond be reformed so as to

provide for payment of interest from its date. The court re-fused the relief asked, for the reason that the proof upon the trial was *vague, uncertain* and *equivocal*.

To the same effect was the ruling in *Pennell* v. *Wilson*, (2 Abbott's N. S. 466,) where a judgment reforming a contract was reversed, upon the sole ground that the evidence was in-sufficient to authorize the judgment.

In *Mills* v. *Lewis*, (55 Barb. 179,) the plaintiff, by his agent, agreed to take in payment for a house, a mortgage, if the defendant would guaranty the payment thereof. The de-fendant agreed with the agent to guaranty the collection of the mortgage.

The assignment was drawn by mistake to guaranty its pay-ment by the defendant. It not appearing that the plaintiff knew of or assented to it, it was held that the defendant was liable as guarantor.

In all of these cases, the essential requisites to authorize a reformation were wanting—mutual mistake of fact and suffi-cient proof.

The lease set forth in the complaint was the only agree-ment upon which the plaintiffs sought to recover, and for a reformation of which the action was brought. The evidence in the case fully justified the findings of the Judge, and that is sufficient to sustain the judgment.

As to the point that Neal O'Donnell did not consent to the alteration, it is sufficient to say that, he allowed Hugh to act for him in the whole transaction, and the knowledge and con-sent of Hugh was that of Neal, also.

Upon the question whether, when an alteration appears upon the face of the instrument, which is not noted, the pre-sumption of law is that such alteration was made after the execution of the instrument, the case of *Maybee* v. *Sniffin*, (2 E. D. Smith, 1), is in point. The learned Judge who delivered the opinion in that case, after reviewing all the authorities, says :

" In this conflict of opinion, it appears to me that the sen-sible rule, and the rule most in accordance with the decisions of our own State, is that the instrument, with all the circum-

stances of its history, its nature, the appearance of the alteration, the possible or probable motives to the alteration or against it, and its effect upon the parties respectively, ought to be submitted to the jury, and that the court cannot presume, from the mere fact that an alteration appears on the face of the instrument (whether under seal or otherwise), that it was made after the signing."

In *Pringle* v. *Chambers*, (1 Abb. Pr. 58,) the court says:

"It is a salutary rule, which our courts are generally disposed to adopt, that where an alteration appears to be suspicious on its face, and is not duly noted, the *onus* lies with the party who claims that the alteration was genuine."

An examination of the testimony is sufficient to establish the presumption that the *onus* rested on the defendants, and that the case was tried upon that theory.

The weight of evidence was in their favor, and the plaintiffs substantially had the benefit of the propositions of law contained in the exceptions taken by their counsel.

The judgment appealed from should be affirmed.

Judgment affirmed.