## INMAN WILLIAMS *v.* W. E. BRICKELL.

1. CONTRACT: CASE IN JUDGMENT.—The defendant was part owner and superintendent of a hotel, kept at a public watering-place. The yellow fever broke out in a malignant form among the visitors and guests, and became epidemic. Under these circumstances, the defendant sent to a friend in a neighboring town a telegram, in substance as follows: "There are many cases of yellow fever at the Well" (the watering place), "send out a physician, without fail, this evening." The person to whom the telegram was addressed showed it to plaintiff, and requested him to go to the Well, which plaintiff did, and attended on the visitors and guests at the hotel. Held, that the telegram did not contain a promise by defendant to pay for the services of the plaintiff, and that he was not liable therefor.

2. EVIDENCE: SECONDARY EVIDENCE OF CONTENTS OF A TELEGRAM.—The testimony of the person to whom a telegram is directed, is inadmissible to establish its contents, without proof accounting for the absence of the original, and that the alleged writer sent it; but the admission of the alleged writer that he did send it, and of its contents, is competent without proof of the loss or destruction of the original.

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

This was an action by defendant in error against plaintiff in error, in the Circuit Court of Hinds county, to recover an open account for $250, for four days' services at Cooper's Well, commencing on the 17th September, 1855. The defendant below pleaded the general issue.

The plaintiff below had verdict and judgment for the amount of the account. The defendant moved for a new trial, which being refused, he filed his bill of exceptions, and sued out this writ of error.

On the trial, plaintiff proved by J. Roach, that about the middle of September, 1855, he then being in Vicksburg, Miss., received a

telegram, sent from the office at Bolton's, in substance and to the effect following: " There are many cases of yellow fever at the Well. Send out a physician this afternoon, without fail." Signed, Inman Williams. Witness, on the receipt of the telegram, applied immediately to one (and he thinks two) of the physicians of Vicksburg to go to the Well. They declined. Witness then met Brickell, and showed him the telegram. Brickell seemed reluctant to go, and leave his regular patients; but upon witness representing to him the necessity of his going, he agreed to go, and did actually go that evening.

Dr. A. B. Cabaniss, for plaintiff, testified that he had practised medicine in Hinds county since the year 1833. Witness met plaintiff at Cooper's Well in said county, about the time stated in the account. Witness only remained there one night. Plaintiff seemed to be much engaged professionally. The yellow fever was then prevailing at the Well in quite a malignant form. Witness saw several of the sick, among others Dr. Beasly and his wife, and a negro boy named Moses. Witness was employed by Beasly; and he and plaintiff consulted about Beasly's case. The account sued on is reasonable. Witness also saw Dr. Hubbard at the Well. Witness and Dr. Hubbard were the attending physicians of Mrs. Clendenin, and they consulted with plaintiff about her case.

Cross-examined. Witness says that negro Moses belonged to Mrs. Saunders, and he attended said negro at her request, and so did Dr. Hubbard. Plaintiff did not attend on Moses.

The plaintiff testified as follows: In September, 1855, hearing that the yellow fever was at Cooper's Well, he, with other physicians from Vicksburg, visited that place. As there were enough physicians there, he went to Mississippi Springs, and attended on Mr. Tatham for a week; he did not charge for this. About the date of the account sued on, J. Roach handed him a telegram from defendant, and urged him to go to Cooper's Well. Witness at first declined to go, but afterwards consented to do so, if he could get another physician to attend on his yellow fever patients he was then attending on. Succeeding in procuring a physician, he started to the Well that evening. On plaintiff's trip from Raymond to the Well, he was overtaken by some person in a buggy, who informed witness that Williams (the defendant) had sent for him. Plaintiff

got off the stage into the buggy, and proceeded to the Well.    He arrived there about the time Dr. Cabaniss did.    A few minutes after his arrival, the defendant took him into a room, and asked him what was the character of the telegraphic despatch under which he came out.    He informed defendant that said dispatch was addressed to J. Roach, and was to the effect that there were many cases of yellow fever at Cooper's Well, and requested said Roach to send out a physician that evening.    Plaintiff asked the defendant if this was right; to which defendant replied it was.

The plaintiff further stated, that there were about twenty cases of yellow fever at the Well.    Plaintiff gave an account of the services he rendered, which consisted of attending generally on those who were sick, for the period of four days and nights.    The persons on whom he attended were guests at the Well.    Plaintiff did not attend on any of the family of defendant, or on any slave belonging to him, or hired by him; he did not inform defendant that he would charge him for his services; plaintiff did not charge any of the sick for his services.

Defendant objected to the testimony of Roach and plaintiff in relation to the telegram sent by Williams to Roach, because the absence of the original was not accounted for.    His objections were overruled.

This was all of plaintiff's evidence.

The defendant then testified, that he was superintendent of the Well in 1855, being employed by the company who owned it at a salary; he was also one of the stockholders in the company. Plaintiff met defendant soon after his arrival at the Well in September, 1855, and inquired of him if he had received a telegraphic dispatch from him; to this plaintiff replied that he had.    Defendant then asked plaintiff what was the character of the dispatch; to which plaintiff replied, that it was to the effect, that there were many cases of yellow fever at the Well, and requested that a physician should be sent there from Vicksburg that evening.    Defendant never promised to pay plaintiff for his services, and plaintiff never informed him that he looked to him for payment, until about three months after he left the Well.    Defendant then denied his liability, but told plaintiff if he would make out his account against the sick persons he treated, and send the accounts to him, he would endeavor

Williams *v.* Brickell.

to collect them for him, as he had done for other physicians who attended the sick at the Well; he also told plaintiff, if he would send out the account, he would present it to a meeting of the stockholders. Defendant did not ask plaintiff to treat any of the sick persons at the Well, and plaintiff did not attend on defendant or any of his family or servants. The visitors employed their own physicians. Cooper's Well was a public watering place in Hinds county, and much frequented by visitors during the summer season. It was so advertised in the newspapers in said county, and also in Vicksburg.

Plaintiff, in rebuttal, testified, that about January, 1856, he wrote to defendant, demanding payment, but received no reply. In February, 1856, he saw defendant, and demanded the amount of the account; defendant denied his liability, but said he would bring the matter before the stockholders.

This was all the material evidence.

It is unnecessary to set out the instructions of the court below, as they were not passed on in this court.

*T. J.* and *F. A. R. Wharton,* for plaintiff in error,

Cited and relied on the following authorities to show that the testimony in relation to the telegram was improperly admitted: *United States* v. *Britton,* 2 Mason C. C. R. 468; *Kello* v. *Maget,* 1 Dev. & Bat. 414.

*D. Shelton,* on same side,

Contended that no sufficient contract to pay for the services rendered by plaintiff was shown, and to support this view he cited, 10 J. R. 249; 20 Id. 28; Wheaton's Selwyn, 43; 13 J. R. 380; 2 East, 505.

*Johnston* and *Shelton,* for defendant in error.

HARRIS, J., delivered the opinion of the court.

The defendant in error commenced his action in the Circuit Court of Hinds county against the plaintiff in error, to recover an account for $250, for four days' service as a physician at Cooper's Well, in September, 1855, during the prevalence of the yellow fever.

The plaintiff in error filed his answer to this complaint, denying its allegations, upon which there was issue and verdict for defendant in error.   Bills of exceptions were taken to the admission of certain testimony.   A motion for a new trial was made and overruled, and judgment and exceptions to this ruling, and the cause is brought here upon writ of error for revision.

The first ground of error relied on is, that the court erred in permitting secondary evidence of a dispatch sent to Roach at Vicksburg, by the plaintiff in error, without requiring the production of the original, or proof accounting for its absence.   This was clearly erroneous, but as there is proof in the record showing the admission, by plaintiff in error, of the contents of the dispatch, as well as that he sent it, the plaintiff in error could not have been prejudiced by this testimony, and it is not, therefore, good ground of reversal.

It will be unnecessary to examine the various assignments of error growing out of the instructions of the court, as no point is made upon them in the briefs of counsel which we deem it necessary to notice under the view we take of this case.   We will, therefore, confine our attention to the last ground of error which presents, the important question in the cause as to the liability of the plaintiff in error to the recovery had against him upon the whole evidence in this record.

It is not pretended by the defendant in error that there was any contract, either expressed or implied, beyond the terms of the dispatch appearing in the record ; and the admission made to him by plaintiff in error, on his arrival at the Well, that he had sent the dispatch.

That dispatch was in these words : "There are many cases of yellow fever at the Well; send out a physician this afternoon without fail.   Signed, Inman Williams," and addressed to Major Roach, at Vicksburg.

It appears from this record that Cooper's Well is a public watering place, resorted to by invalids and others.   That the plaintiff in error was, at the time of this dispatch, the agent of the stockholders, and himself a stockholder.   That there were many visitors at the Well and boarders in the house kept by plaintiff in error. That the yellow fever appeared there, and spread among the visi-

tors to an alarming extent. Under these circumstances, we are to consider this dispatch to ascertain whether it imparts any obligation on the plaintiff in error to become responsible to the physician who went to their relief, for the many sufferers who might need his services at the Well.

*Contracts* are not to be lightly inferred. In cases of this description, where men, prompted by motives of humanity alone, seek assistance for a suffering community, or even individuals incapable of helping themselves; if men are to be made responsible for notifying physicians or others, of the distressing casualties which demand immediate aid around us, almost daily, the claims of pressing calamity may be disregarded, for fear that the kind messenger may become the victim of avarice through his generous sympathy.

In the case before us there is nothing to induce the belief that either the writer of the dispatch, or the person to whom it was addressed, or the defendant in error, understood or intended it as a contract or employment.

It simply announced a fact: " There are many cases of yellow fever at the Well, and requested that a physician should be sent out that afternoon without fail."

Can it be supposed for a moment that the writer intended, by this dispatch, to make the impression upon Major Roach, or upon the physician who should see the dispatch, that the plaintiff in error would pay for the services he might render to the various boarders and visitors who might have the yellow fever at the Well? Or is it possible that anybody could have mistaken the motive and intent of the writer? He was in the midst of distress, disease, and death, which commanded the sympathy and excited the fears of the whole community. They needed medical skill, and desired some friendly aid from the neighboring city of Vicksburg. What so natural as that a human heart should desire to proclaim their distress and beg for assistance. And upon whom was it more incumbent to give notice of their situation, than upon the keeper of the hotel. What less could he have done or said to have avoided the charge now made against him? Suppose that one travelling on our steamboats or railroads should find himself suddenly surrounded by the wounded and dying, from one of the distressing casualties incident to these

modes of travel, and, prompted by duty and necessity, he should instantly seek some neighboring physician and others, and summon them to the relief of his distressed fellow-travellers. Because he did not stop to bargain with human beings in a civilized community against personal liability, can it be reasonably inferred that he intended to assume upon himself the *whole* duty and responsibility which belonged to every citizen in their reach, as much as to him? And yet the principle contended for would make him personally liable for all the service that might be rendered by all, whom the voice of humanity, speaking through him, had summoned to the scene. Neither reason, public policy, nor public necessity can tolerate such a principle.

A contract or "agreement upon sufficient consideration," cannot be implied from such conduct.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.