## BOOTH *vs.* BIERCE & MONELL.

The defendants sent their agent, B., to the plaintiff, with a written order for a load of rye, nothing being said, in the order, as to the price, and B. having no authority to make a contract. The plaintiff informed B. that his price, for the rye, was seventy-five cents per bushel, and that he would let the defendants have it at that price; and he directed B. to inform the defendants what the price was. This B. omitted to do, but took away a load of rye, and on returning for another load falsely stated to the plaintiff that he had told the defendants the price, and they did not object to it; whereupon he obtained another load. The market price for rye, at that time, was only fifty cents per bushel. *Held* that the plaintiff was entitled to recover the sum named by him to B. as his price, for the grain.

*Held, also,* that there being an apparent bargain and sale at the vendor's price, which was entered into, on his part, in good faith, and which he had a right to rely upon as a valid agreement on the part of the purchasers, if either party must suffer from the misunderstanding it should be the one who employed the agent by whom the fraud, which occasioned the injury, was practiced.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover the price of eighty-eight bushels of rye sold and delivered by the plaintiff to the defendants, at seventy-five cents per bushel. The defendants, in their answer, alleged that they purchased and the plaintiff sold and delivered to them 5105 pounds of rye, upon the understanding and agreement that they should pay the market price therefor, which was, at that time, and in that vicinity, from thirty-seven and a half to forty-five cents, per sixty pounds of rye. And that they were ready

Booth *v.* Bierce.

and willing and offered to pay that sum. And the defendants averred a tender of the sum of $42.52, and a refusal by the plaintiff to accept that sum; and that such tender had been kept good. The action was referred to a referee, to hear and determine. After hearing the proofs and allegations of the parties, the referee made his report in writing, by which he found the following facts: That the defendants on the 30th day of July, 1861, were copartners in the distilling business at Shortsville, in the county of Ontario. That on the said 30th day of July, the defendants wrote an order in the words and figures following, viz:

*"Shortsville,* July 30th, 1861

Mr. J. F. Booth, Dear Sir: Please to send us a load of rye, and we will settle with you for the same at any time that you are down here.

Yours, truly,　　　　　BIERCE, MONELL & Co."

That the said order was in writing, enclosed in an envelope, sealed up and handed by the defendants on the day of its date, to one George W. Babcock; that the said Babcock was directed at the same time by the defendants to take the order and go to the said plaintiff's and get the rye. That Babcock took said order and went with it to Booth, and handed him the order; that the order was read by Booth, and after a conversation between Booth and Babcock a load of rye was delivered by Booth to said Babcock, for the defendants, and taken by Babcock to the defendants' distillery in Shortsville, and received and used by them. That on the next day he was sent by the defendants to the plaintiff's to get another load of rye, and the plaintiff then delivered to him, for the defendants, another load of rye, which was received and used by the defendants at their distillery. That the amount of rye thus delivered by the plaintiff to the defendants, was 5102 pounds. That the market value of rye at that time was fifty cents per bushel, of sixty pounds. That the plaintiff before delivering the first load to Babcock, informed him

that his price for the rye was six shillings a bushel, that he had raised it for his own use and not to sell, but if it would be an accommodation he would let him have it; but he must pay six shillings a bushel, and that he (Babcock) must tell the defendants what the price was. That when he came after the second load, the plaintiff asked him if he told the defendants the price of the first load, and that he told him he did, and that they made no objection to it. And the referee further found that Babcock was at the time he got the rye in the employ of the defendants as miller. That he was not a general agent of the defendants, and that he did not inform them, or either of them, at any time after receiving from Booth the rye, or any part of it, the price Booth had put upon it. That the defendants had no knowledge that the plaintiff would charge six shillings per bushel for his rye, until Booth came to the distillery for his pay for the rye after it had been delivered. That Babcock had no authority from the defendants to contract at all; that his agency was merely manual, mechanical, and no more.

And the referee found, as conclusions of law, that there was no contract made between the plaintiff and defendants, by which the latter agreed to give the former six shillings per bushel for his rye. That the plaintiff was entitled to recover of the defendants the market price of the rye delivered on the 30th and 31st days of July, 1861, and no more, with the interest from the 31st day of July, 1861. The amount delivered being eighty-five and one-thirtieth bushels at sixty pounds per bushel, and the market value being fifty cents per bushel, the referee adjudged that the plaintiff recover of the defendants the sum of forty-two dollars and fifty-two cents, with interest. To which said report and decision, the plaintiff excepted in writing.

*J. Herron,* for the appellant.

*N. A. Woodward,* for the respondents.

Booth *v.* Bierce.

*By the Court,* JOHNSON, J.   The referee has found, as a fact in the case, that before the plaintiff delivered the first load of rye to the defendants' agent, he informed such agent that his price for it was six shillings per bushel ; that he had raised it for his own use and not to sell ; but if it would be an accommodation to the defendants he would let them have it at that price; and he directed the agent to tell the defendants what the price was.   He further finds that when the agent returned, the next day for the other load, the plaintiff asked him if he had told the defendants the price, and was informed by the agent that he had, and that they made no objection to the price, and thereupon another load was delivered.   He also finds that the agent did not inform the defendants in regard to the price ; that the defendants had no knowledge of the price which the plaintiff asked ; and that the market price for rye was then only fifty cents per bushel.

It was clearly the duty of the defendants' agent to inform them in respect to the price which the plaintiff asked for his grain, to the end that his principals might elect either to keep it at the price fixed by the plaintiff, or refuse to take it and return it.   Instead of this, he not only omitted to inform his principals of the price, but fraudulently asserted to the plaintiff that he had informed them, and that they had assented to it, and by that means obtained another load. It is plain enough that no price was fixed by agreement between the plaintiff and the defendants' agent.   The plaintiff did not treat with the agent as having any authority to agree upon the price.   He fixed his own price, leaving it optional with the defendants to take the grain at that price, or not take it at all, when they should be advised as to what the price was.   It is equally clear that the defendants never agreed to pay the price asked, but took the grain and used it with the implied understanding that they were to pay what it was reasonably worth ; in other words the market price.

There was no meeting of minds between them, in point of fact, on the subject of price.   Upon the question of sale,

and purchase and the transfer of title, their minds did meet, but not upon the price. Each party is disappointed in respect to price, through the neglect of duty, and the positive fraud of the defendants' agent. The defendants took the grain and used it in ignorance of the price asked by the plaintiff, and the question is whether the latter is to recover the price at which he intended to sell, or the price at. which the defendants intended to purchase. There can be no doubt, I think, that in such a case the seller is entitled to recover his price for the article. Here was an apparent bargain and sale at the plaintiff's price, which was entered into on his part in good faith, and which, he had a right to rely upon as a valid agreement on the part of the defendants. If either party must suffer, it should be the one who employed the agent by whom the fraud which occasioned the injury was practiced. (*Dunlap's Paley on Agency*, 302, 303. *The Bank of the United States* v. *Davis*, 2 *Hill*, 451. *North River Bank* v. *Aymar*, 3 *id*. 268. *Lobdell* v. *Baker*, 1 *Metc.* 203. *Dunning* v. *Roberts*, 35 *Barb*. 463.) The case comes fairly within this well established rule, as to the whole quantity delivered ; because the plaintiff, relying upon the fraudulent representation of the agent, not only delivered the second load, but omitted to reclaim the first load, which had been delivered by the defendants, on condition, only, that the price asked should be agreed to by them.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, September 7, 1863. *E. Darwin Smith, J. C. Smith* and *Johnson*, Justices.]