Brady, J.
It appears that in March 1874, and while a former mail contract was still running which the plaintiff was performing, a further contract was made for the same service for the term of four years, to begin at the termination of the then existing con *390 tract, namely, July 1, 1874, and that the defendant was named as the contractor under the following circumstances : The postmaster-general had advertised according to law for bids for the contract. The president of the company being in Oregon telegraphed and wrote to one Thompson, who was then in Washington, to bid for the contract, and authorized him to make the necessary deposit of forfeit. Thompson, however, made an arrangement by which the defendant should bid and become one of his sureties, as the defendant could not act in that capacity for him. The defendant made a bid, which was accepted, and the necessary deposit was made. The validity of such a transaction as between tlie parties hereto has already been determined by this court in this case on a former appeal (see Oregon S. S. Co. v. Otis, 27 Hun, 452).
The rate of compensation agreed upon, as found by the referee and as established by the evidence, to be paid the defendant, was two and one-half per cent, for collecting the mail pay. It appeared in evidence, also, in connection with this subject, that the defendant had been the agent of the company during the previous contract, although that evidence was objected to. • It appears conclusively that it was assumed by the company and its officers that the contract which was bid for by the defendant belonged to the plaintiff, and that the defendant was acting as its agent; and this was also held to have been satisfactorily established by the referee as a fact in the case. The defendant, however, claimed in February, 1875, that the company had agreed to give him a salary of one hundred and seventy-five dollars per month, or to pay him some portion of that sum in addition to the two and one-half per cent., and insisted upon deducting it from the collections which he made. This led to some discussion between the officers of the company, or some of them, as shown by the evidence in the ease.
*391 The referee, however, found, as already suggested, that the contract was made for the plaintiffs by the defendant as its agent, and that the compensation agreed upon was to.be the sum mentioned, namely, a commission of two and one-half per cent, for collecting the amounts which were to become due under the contract from the government, and rejected the additional claim. The referee has expressed his views in an elaborate opinion which, it is thought, very clearly and cogently arrays the facts and circumstances which justify his findings of fact, and which is accepted and approved as a correct—and, indeed, unanswerable—exposition of the facts and of the law applicable to the-case. - There is no reason, therefore, for disturbing the-findings, ■ and unless some error was committed in the reception or exclusion of evidence properly presented on exceptions duly taken, the judgment must be affirmed.
During the trial a number of telegraphic despatches, ■were admitted in evidence purporting to have beein signed by the defendant, addressed to William Norris,, who was acting on behalf of the plaintiffs, and which were received by the latter at San Francisco, California.
At the commencement of the trial, a clerk of the executive of the Western Union Telegraph Company, over whose lines the messages seem to have been sent,was called, and who appeared in obedience to a subpoena duces tecum, which was served on the company by the plaintiff, describing certain telegrams from October, 1874, to September, 1878, which they were-required to produce and which embraced those objected to. He testified that the telegrams thus partic.ularly mentioned in the subpoena, by date and description, had been destroyed. This authorized the-introduction of secondary evidence as to their contents. Evidence was also given, as already suggested,. *392 that the defendant had formerly been an agent of the company in reference to the prior mail contract; and upon these exceptions rests the force of the appeal taken in this case.
It has been settled that a former relation of agency is competent for the purpose of interpreting communications, written and oral, between the plaintiff and the defendant in reference to the contract which is asserted to have been performed (Richards v. Millard, 56 N. Y. 574); and the objections based upon this element of the case are therefore of no value.
The telegrams, to the admission of which exception has been taken, were properly admitted.
The original message, it is true, is the primary evidence, and it is only on proof excusing its production that a copy of it can be received in evidence or its contents be shown aliunde. The rule which is applicable to letters, applies to telegrams affecting contracts (Wharton on Ev. § 76 ; Scott & Jarnagin Law of Tel. § 340; Matteson v. Noyes, 25 Ill. 591; Durkee v. Vermont Central R. R., 29 Vt. 127).
Objections were also taken to certain letters and telegrams of Mr. Norris, which were proven by him to have been sent to the defendant, but of the receipt of which by the latter no proof was given. These objections are of no avail, however, inasmuch as it is a presumption of evidence that they were delivered (Wharton) s Law of Evidence, § 1324 et passim). It must be here observed that all the letters and telegrams which were objected to were germane to the subject to which the other telegrams relate and to the admission of which no exception was taken, viz., the defendant’s bid for the contract for mail service on behalf of the plaintiff, his compensation at the rate of two and one-half per cent, on the amount collected, and his claim for additional compensation to which reference has already been made. These letters and telegrams bear *393 the most conclusive evidence in their contents of their applicability to these subjects, and that they do bear this relation is even more conclusively established by the fact that when the defendant took the stand as a witness he did not deny that he sent those to which objection is taken for want of the production of the originals, or that he failed to receive any of those or of the letters which were sent to him. It has been held in Williams v. Brickell (37 Miss. 682), that although secondary evidence of the contents of a telegram is inadmissible without accounting for the absence of the original, yet a new trial will not be granted on account of the irregular admission of such secondary evidence if it appears that the sender himself admitted the sending of the telegram and the contents of it. His omission to deny the sending of the alleged telegrams should have the same effect (Adams v. Davidson, 10 N. Y. 309, 313, 313).
The result is that even if these telegrams and letters could be said, respectively considered with reference to the condition of the evidence at the time of their admission to have been improperly received, nevertheless when they are grouped with the other telegrams and considered together, particularly in view of the defendant’s omission to deny the sending or receipt of them, there can be no doubt that they were proper items of evidence, contributing to the investigation, which was conducted before the referee, namely, to ascertain whether or not the mail contract which the plaintiff claimed was obtained wholly through the instrumentality of the defendant as. its agent, and whether the commission of two and a-half per cent, was to be his compensation for the service rendered, and for the collection of the mail money.
It frequently happens that testimony immaterial, irrelevant or incompetent at the time of its admission becomes material, relevant or competent by subsequent *394 incidents marking the progress of the trial. The consideration of the letters and telegrams alluded to is an > illustration of this proposition. If the telegrams and letters related to another and different subject from that which was embraced in the main issue between the parties, the question of the propriety of their admissibility might arise. But, as already suggested, they were germane to the subject; indeed it may be said exclusively so, and therefore were or became pertinent and material.
For these reasons, in addition to those assigned by the referee, we think the judgment should not be disturbed, except to modify it by reducing it nineteen dollars and forty-seven cents, which is conceded to have been an overcharge of interest.
Ordered accordingly ; and as the parties have stipulated in reference to the modification, the plaintiff is entitled to costs.
Davis, P. J., and Daniels, J., concur.
Note on Proving Telegrams.

Best and secondary evidence.

In applying the rule of best and secondary evidence to telegrams in a doubtful case, attention should first be given to the question, what is the fact desired to be proved 1 The principal classes of cases and the sound application of the rule, may be conveniently illustrated by considering these facts separately.
I. Proving a proposal or acceptance on the part of the senderJ\ The essential fact in this class of cases is the communication of a proposal or order, or the manifestation of assent. It is not enough, for the purpose of proving a contract, to show assent; it is necessary to show that the assent was manifested. White v. Corlies, 47 N. Y. 467. This does not always involve actual reception of the communication by the other party; for, in some cases the agreement or course of dealing of the parties, and in some cases the law, treats as a sufficient manifestation of assent by one party, a communication which fails to reach the other party. But in cases requiring proof of proposal of a contract or of assent to a proposal, proof of mere intent is not enough.
*395 The question, therefore, as to the proper proof of a telegram as a proposal or a manifestation of assent, resolves itself into this: What, under the circumstances of the case in hand, is required to be shown: actual communication reaching the recipient, or a declaration put in the way to reach him in the ordinary course; and this may involve the question whether the sender is attempting to prove it against the intended recipient, or the intended recipient attempting to prove it against the sender.
1. Gases where the company is the sender's agent.] If one sends an offer or proposal without having been in any way invited to adopt the telegraph as a means of communication, the company is his agent, and the primary evidence as against him of the offer is, of course, the transcript delivered to the recipient. If the message does not reach him, there is of course no proposal; if it reaches him in an altered form, the question arises whether the case falls within the rule, that where there is a mistake on a material point, there is no contract, because the minds of the parties fail to meet, or whether it fulls within the rule that a party is bound by the act of his agent.
On this question the authorities are not agreed. The weight of opinion seems to incline to the hitter view.
In Durkee v. Vermont Central R. R. Co., 29 Vt. 127, it was said by Redfield, Oh. J.: ‘‘The first communication in a transaction, if it is at all negotiated across the wires, will only be effective in the form in which it reaches its destination. In such a case inquiry should first be made for the very dispatch delivered. In default of that, its -contents may be shown by the next best proof.”
This case was quoted with approval in the case of Saveland v. Green, 40 Wisc. 431, 440. In that case the defendant employed a • certain person to charter his vessel to carry wheat from Milwaukee to Buffalo, on condition that a cargo of coal for Milwaukee could be procured at Buffalo. The person applied to, employed a ship broker, •who telegraphed to the plaintiff and procured in this way the vessel to be chartered at the authorized rate, but did not mention the condition. On the trial the plaintiff introduced in evidence the message as received by him, and the message delivered in Buffalo was not produced, nor was its absence accounted for. The court held that he had a right to do so, as the telegraph company was, under the circumstances, the agent of the defendant, and the message as delivered was therefore the primary proof.
It may be observed that one of the two cases which the court mentioned as holding a somewhat different doctrine, viz.: Matteson v. Noyes, 25 Ill. 591, has been explained in Morgan v. People, 59 Ill. 58, as merely deciding that a copy of a telegram is not evidence, but *396 that the original must be produced. The doctrine in that State is the same as that recognized in the Wisconsin decision, “ Where a party sending a "message is the responsible party, and sends a message for the purpose of giving directions to be acted upon, the message delivered at the end of the line is the original.” Morgan v. People, 59 Ill. 58. To the same effect is the very recent case of Wilson v. Minneapolis R. Co., 18 Northw. Rep. 291, where the court says: “It is as though the communication had been made orally by a personal agent, in which case it would have been enough to prove the agency and the message delivered by the agent.’’
When therefore, the sending of a message is admitted, and further, that the message sought to be proved is the one sent, except that it has been changed in its terms, in transmission, the message received, is the primary evidence. But where the sending is denied, it may not be admissible for want of foundation.
But' it was held in Smith v. Easton, 54 Md. 138, that where it was sought to charge a party with a liability, on the ground of his having sent a certain telegram, the message as sent by him is the original, and that, though secondary evidence of its contents may be given on proof that the original was destroyed, and though the copy as received by the person addressed is available for that purpose, yet it is so only if evidence can be given that it is a correct transcript of a message which was actually authorized by the party sought to be affected. Compare an article on telegrams as evidence, in 14 Centr. L. J. 262.
In Burt v. Winona & St. P. R. Co., 18 Northw. Rep. 289, it was held that where the defendants claimed to have sent a certain dispatch, they could not read in evidence of the fact the copy received by the person addressed, without showing that the message had been sent by them, and not by a stranger. To the same effect see United States v. Babcock, 3 Dill. 573.
But in Whilden v. Merchants’ and Planters’ Nat’l Bank, 64 Ala. 1;’S. C., 38 Am. Rep. 1, with note, it was held that where it was "sought to charge the sender of a telegram with a certain liability, it was enough to lay a foundation for the introduction of secondary evidence, to show that the original message was sent from a place beyond the jurisdiction of the court; and, further that the telegram received "was in itself proper secondary evidence.
It must be considered, however, in comparing the latter part-of the decision with the other cases quoted, that" the’appellants had admitted the genuineness of the dispatch received, on" the trial. Under these circumstances' the question whether the copy received was primary or secondary, is of no practical importance, as no new trial *397 will in any case be granted on account of its admission. Williams v. Brickell, 37 Miss. 682.
The doctrine laid down in these cases, viz.: that a telegram received is not even secondary evidence unless it is proved to be genuine, if logically carried out, is in contradiction with the rule existing in the case of letters, viz.: that it is enough to show that a letter has been received in answer to a letter addressed to a certain person, in order to authorize the introduction of that letter in evidence, as coming from, or being written by order of, that person. Connecticut v. Bradish, 14 Mass. 296; Johnson v. Durern, 19 Johns. 134. This, if applied to telegrams, would lead to the conclusion that if a telegram is received in answer to another telegram, the copy received can be used at least as secondary evidence without any further proof that it is genuine. The same presumption which leads to the rule as to letters, viz.: that people take care that strangers cannot send answers to letters addressed to them, would apply. The exact point has never been decided. The one point decided in Hawley v. Whipple, 48 N. Y. 487, was that, in such a case, the message sent was the primary evidence, and that the rule just quoted as to letters did not authorize the introduction of the copy received, as primary evidence.
Perhaps, under the provision of section 735 of the Code of Civil Procedure, it might avail, where use is to be made of the copy received, to offer a copy of the telegram received, to the attorney on the other side, and ask for an admission of its genuineness.
If, on the question of responsibility for errors, any analogy can be drawn from other modes of communication which are subject to alteration in transmission, it may be found by comparing the following cases.
Plaintiff’s agent procured a written order from defendants to publish their advertisement for a sum named therein. Plaintiff having refused to fulfill the order at the sum named, the agent fraudulently altered the sum to a larger one, and as thus altered plaintiff fulfilled it. Held, that if plaintiff had shown that the alteration was made without his knowledge, he might have recovered for the service the sum written by defendants ; but as this did not appear affirmatively, he could not recover. Trow v. Glen Cove Starch Co., 1 Daly, 280.
©efendants sent to plaintiff, by their teamster, a writtea order for a load of rye, for which they agreed to settle, whenever plaintiff should come to their place. No price for the rye was named by them. Plaintiff delivered a load of rye to the teamster in compliance with the order, but said he must have seventy-five cents per bushel for it, and that he must tell the defendant so. The following day the teamster returned for another load, and informed”plaintiff that he had de *398 livered the message concerning the price of the rye, and no objections were made, which statements were false. Plaintiff thereupon delivered another load, which was received and used by the defendants. Held, that the teamster had no authority to contract for defendants, his agency being merely manual. There was no meeting and concurrence of mind between the parties upon the question of price, such as is essential to an agreement or contract—hence the market value of the rye at the time of delivery was all that plaintiff could recover. Booth v. Bierce, 38 N. Y. 463 ; rev’g 40 Barb. 114.
In Phillip ®. Gallant, a case whore negotiation was through an interpreter, the fact that defendant, who did not understand English, was misinformed by the interpreter as to the effect of the contract sued upon, was held no defense, in tile absence of fraud or improper influence, and where the other party acted in entire good faith. If, whatever a man’s real intentions may be, lie so conducts himself that a reasonable man would believe that he was assenting to the terms proposed by the other party, and that other party, upon that belief, enters into the contract with him, the man thus conducting himself will be equally bound as if he had intended to agree to the other party’s terms. Phillip v. Gallant, 62 N. Y. 256 ; modifying, 3 Supm. Ct. (T. & C.), 618 ; mem. of S. C., 1 Hun, 528.
When an indorsee, prior to his taking the note, sends it by a messenger to the maker, with instructions to inquire if it is a business note, and the inquiry is made, and he answers that it is ; after proof of such facts, the indorsee may prove that the messenger, in returning, reported to the indorsee what the maker said, by any person who heard him make such report. Proof of the latter fact is material, to show that the representation made, or answer given, was communicated to the indorsee before he took the note, and such proof may be made by any person who knows the fact. Robbins v. Richardson, 2 Bosw. 248.
A scrivener, employed to execute an assignment of a mortgage and guaranty of collection, on the sale of a horse, drew, by mistake, a guarantee of payment, which was executed and delivered with the assignment of the mortgage by defendant.. The mistake was discovered by plaintiff’s agent at the time of delivering the assignment, but was not known to defendant until after the mortgage had fallen due. In an action upon the guaranty, defendant set up the mistake and prayed a reformation of the instrument. Held, that as plaintiff was free from imputation of fraud, and the mistake occurred through the scrivener’s fault, there was no meeting of the minds of the parties as to the sale, and there was not a mutual mistake. That it was competent for defendant to return the horse and *399 rescind the contract, this being the only relief to which he was en titled. And as he had not returned the horse, plaintiff was entitled to judgment for the amount due upon the mortgage with interest. Mills v. Lewis, 37 How. Pr. 418 ; S. C., 35 Barb. 179.
2. Gases where the company is the recipient's agent.] If the intended recipient has made the telegraph company his agent by requesting reply through it,- or if the case is one in which assent by letter would be sufficiently manifested by mailing a letter irrespective of whether it reached the intended recipient, then the dispatch delivered by the sender to the company is the primary evidence, and he need not prove that there was any transcript of it received.
The question this point turns on is more commonly discussed with reference to letters, and the leading case is Mactier v. Frith, 6 Wend. 103, and one of the most recent cases is Ferrier v. Storer, 19 Northw. Rep. 288. Other cases are collected in 16 West. Jur. 337 ; 29 Moak Eng. 347, n.; 27 Alb. L. J. 245.
The same rule was applied to telegrams in Trevor v. Wood, 30 N. Y. 307. It was held there that where the offer is by telegram, the acceptance signified in the same manner is sufficient to complete the contract, irrespective of the time when it comes to the knowledge of the proposing party.
It follows from the principle applicable to letters, that in this class of cases the sender’s manuscript is the primary evidence ; and that no evidence of any transcript received by the intended recipient is necessary as against the recipient!
II. Proving merely knowledge or notice on the part of the recipient.] In this class of cases, the transcript received is of course the primary evidence, unless the company had been made by him his agent in such sense that delivery of the telegram to its servants was notice to him.
In the case of State v. Hopkins, 50 Vt. 316, which was a trial for •forgery, the State attempted to prove that the accused had at a certain time knowledge of a certain fact. It introduced in evidence an uncertified copy of a telegram received by a third person, purporting to be signed by the accused inquiring about that fact, and the telegram received by the accused in answer thereto. The third person testified that it was a true copy. The prosecution also showed that the original message sent by the accused had been destroyed. It was held that both the telegram and the copy were properly received in evidence.
III. Proving merely knowledge or admission on the part of the sender.] If I seek to prove that on a given day the adverse party had knowledge of a certain fact, any admission by him is competent, without *400 reference to the question to whom was the admission made, or even whether it was communicated to any one. His entry in a private diary is primary evidence against him. See for instance Harrington v. Ketteltas, 92 N. Y. 40 (case of deposit ticket). If he wrote a statement of the fact on a telegraphic dispatch, and never sent the dispatch, the paper would nevertheless be competent against him, provided his writing or dictating were proved, and subject to his right to explain mistake, etc., and to show that it was not sent for some such reason.
Hence, when the object is simply to charge the writer with notice or knowledge of the matters contained in the dispatch, the original is the primary evidence, while evidence of the sending of the dispatch is not essential.
In Baron v. Brown, 25 Kans. 410, the action was for money had and received, and it was attempted to prove by secondary evidence, the contents of a telegram, alleged to have been sent by the person sought to be charged, to a third person not a party to the action, in order to show that the money had been received by him. The court held, that in this case the original message was the primary evidence, and that the preliminary proof was not sufficient to let in secondary evidence, because the witness introduced by the plaintiff to prove that the original dispatches had been destroyed, merely testified that he supposed that such was the fact.
In Lewis v. Havens, 40 Conn. 363, the plaintiff, in order to prove that defendant had rented certain rooms, produced what purported to be a telegram of the defendant to a third person not a party to the action, which was found among the files of the telegraph company, in which the defendant appeared to communicate the fact that she had rented the rooms. The telegram was written in pencil. Defendant admitted that she had sent a telegram that day, but swore that the telegram produced was not her handwriting, that the one she had written was written by herself, was in ink, and was entirely different from the paper sought to be put in evidence. It was held, that there was no error in ruling that the paper, without other evidence that it was written or sent by defendant, was inadmissible.

Telegrams not privileged.

It was held in Exp. Brown, 72 Mo. 83, that telegraphic messages in the possession of officers are not privileged communications, and that neither by statutory provisions, nor by any general principle of law, are they put on the same footing as the mails; the fact that a vast amount of business is transacted through this medium is only a fact for the *401 consideration of the legislature in determining the propriety of placing telegraphic communications on the same footing with correspondence by mail.
But under section 23 of the Missouri Bill of Bights, which prohibits unreasonable searches and seizures, and require, a description of the thing to be seized, a requisition to produce all telegrams sent or received by different parties within fifteen months, is too vague, because it calls for documents which may be entirely unconnected with the matter at issue. Even independent of the statutory provision, the same principles which limit the power of a court of equity to compel a discovery would apply here.
This decision, as to the latter point, is in opposition to the decision of the St. Louis Court of Appeals, in the same case (7 Mo. App. 494) and adopts the dissenting opinion of Judge Lewis.
The same doctrine, viz., that telegrams are not privileged communications, is recognized in Nat. Bank v. Nat. Bank, 7 W. Va. 544. That case also holds that before a dispatch or copy of a dispatch, purporting to be written by a certain person, can be read in evidence, it must be proved to have been written and sent by the party whose name it bears.
In United States v. Babcock, 3 Dill. 567, such a general indication of the telegrams was held sufficient. This case is expressly disapproved in Exp. Bruen, 72 Mo. 96.
In Tomline v. Tyler, 44 L. T. 187, it was held, by Lush and Manisty, JJ., that the post-office authorities could be required to produce certain specified telegrams. They considered that the Stroud case (2 O'M. & H. 110), in which a different doctrine was recognized, was overruled by the Bolton case, 2 O'M. & H. 139.
A similar decision was made in In re Thomas T. Smith, 7 Ir. L. R. 286. The subpoena there was to produce all telegrams sent by a party from a certain date. The order for the production was made, but it was intimated that the subpoenas, in cases of this nature, should be so limited by reference to the date, and of the documents sought to be produced, as to cause as little trouble as possible to the post-office department.
The reasoning in both these cases clearly shows, that the sole object of requiring a specification is the convenience of the post-office, not the fear that by a general description private affairs may be revealed. In the case first quoted, Lush, J., refuses to admit this argument against the production, saying that a consideration of this kind maybe an argument against admitting the telegram in evidence, but not against its production by the officials.

*402
Press-copies not primary.

Press copies of letters are only secondary evidence, “ and the fact that a party keeps letter-press copies of letters does not obviate the necessity of producing the originals, or of laying the foundation in the ordinary and usual way for secondary evidence.” Foot v. Bentley, 44 N. Y. 171.
The same doctrine is recognized in King v. Worthington, 73 Ill. 161; Watkins v. Paine, 57 Ga. 50; Delaney v. Ericsohn, 10 Neb. 492; Ward v. Beals, 15 Northw. Rep. 353.
It was claimed in Cable v. Paine, 8 Fed. Rep. 788, that a different rule was recognized in all the districts in Illinois, and a new trial was asked on the ground that such press-copies had been excluded. The judge before whom the application was made was the same who excluded the evidence, but he granted the new trial on the ground that when he excluded the copies he was under the impression that an appeal was possible. As he saw now that such was not the case, he wanted to give the plaintiff an opportunity to establish his proposition that the law as to admission of copies was as he stated it to be.
Where such a case for the introduction of secondary evidence was made, it was held to be a sufficient verification, if the handwriting of the press-copy is identified by the party who wrote the original letter. Smith v. Moorhead Manuf. Co., 23 Minn. 141.
But where the question was whether a certain signature was in the handwriting of the defendant, who relied on its being a forgery as a defense to the action, the court held that it was error to admit a press-copy; taken from defendant’s letter-book, in order to enable the jury to make comparison of handwriting. Cohen i>. Teller, 93 Penn. 8t. 123. The reason given was, that the spreading of the ink often obliterates the fine lines of a handwriting, though substantially preserving its original form.
Secondary evidence, and the foundation therefor.
It was held in Marsh v. Hand, 35 Md. 123, that in order to make out a case for'the production of secondary evidence, there must be a notice to the opposite party to produce the original, and either admission or proof that it had b.een received by him.
It was held in Reliance Lumber Co. v. Western Union Tel. Co., 58 Tex. 394 ; S. C., 44 Am. Sep. 620, that where the action was against the telegraph company for non-delivery of a telegram, addressed to plaintiff, it was not necessary to give notice to produce, in order to allow the introduction of parol evidence. The reason given was that, in this case, from the very nature and character of the suit, the defendant knew that he was charged with the possession of the *403 telegrams, and that, in such a case, the rule requiring .notice to produce did not apply. The court disapproves Western Union Tel. Co. v. Hopkins, 49 Ind. 227, where secondary evidence, under the same circumstances, was excluded.
But in considering the question what is sufficient proof of receipt by the adverse party, the rule of law must be considered, which makes evidence of the mailing of a letter presumptive evidence of its receipt by the party addressed. As was said by Judge Dillon in United States v. Babcock, 3 Dillon, 573, citing 7 Allen, 563; Tanner v. Hughes, 33 Pa. St. 290, “it is not a conclusive presumption; it is evidence tending to show that such letters reached their destination, tending, if credited, to show the receipt of such letters.”
So it was held in Smith v. Moorhead Manuf. Co., 23 Minn. 141, that it was not error to admit a letter-press copy, after the writer of the letter had testified that the original was left in the office of a firm, where he was employed, upon the desk for the mail as other letters were usually left in that office, and that letters so left were usually mailed by some clerk or person belonging to the office, and that he had no recollection of seeing the letter afterward.
And in Rosenthal v. Walker, 111 U. S. 193, the supreme court of the United States held, that where the point at issue was whether certain letters had been received, and the plaintiff in error, in response to a subpoena duces tecum, swore that he had never received the letters, it was not error, after the defendant had testified that he had mailed the letters himself, duly addressed and post-paid, to admit secondary evidence, viz., letter-press copies of the contents. There were other facts tending to show the receipt, but the court held, that, independent of these, the fact of mailing made out a prima facie case that it had been received, citing numerous English and American cases.
And in Vancil v. Hauler, 27 Kans. 408, where secondary evidence had been introduced to show the contents of a postal card, after the defendant had testified that he had mailed it, and the plaintiff that he had not received it, this ruling was sustained.
Following the same principle, it was held in Hedden v. Roberts, 134 Mass. 38, that in order to prove the receipt of a letter, it may be shown that on the envelope was a printed request for the return of the letter to the sender’s post-office, if not called for in ten days, and that it had not been returned.
In a recent English case, Trotter v. McLean, 13 L. R. Ch. Div. 574, 579, the court held, that where the letters were not produced on notice, secondary evidence was admissible even if the writer cannot *404 swear that he actually posted the letters, but merely that he had no doubt, that in the ordinary course of business, he had posted them.
At nisi pi'ius, it was recently held in England (Rowlands v. De Vecchi, 1 Cababé & Ellis, 11), that, where the boy who had posted the letter was dead, plaintiff could not prove the posting of a letter by the testimony of a witness, that on the day the letter was alleged to have been written, a letter from plaintiff to defendant was read over to him, that a copy was taken, that it was placed in an envelope directed to defendant, that it was given with two or three others to the deceased boy to post, that the deceased and witness left (he office together, and that all these letters were then in the deceased’s hand to take to the post. Compare Abb. Tr. Ev. 291, 433; Pearce v. Langfitt, Pa., Dec. 1882, 13 Pittsbg. Leg. J. 225.
The case of First National Bank v. McManigle, 69 Pa. St. 156, seems somewhat at variance with other cases, as the court states that there is not such a presumption of law that a letter mailed to one at the place he usually receives his letters, has been received by him, as to allow, in the absence of other evidence to that effect, the point to be submitted to the jury. But it will be seen that -this is a mere dictum, as the letter in that case was not addressed to the party, against whom it was to be used, but to another person who usually transmitted his letters to him; there was therefore a double inference to be drawn by the jury if nothing but the mailing was proved, and this was not allowed by the court. Compare Bensiger v. Wren, Pa., Oct. 1882, 27 Alb. L. J. 417.
Where the fact whether a letter had been mailed was in issue (the action .being to enforce the penalty against sending obscene matter through the mail), it was held that a post-mark upon the envelope of a letter, offered presumptive proof that such letter had been deposited in the mail. United States v. Williams, 3 Fed. Rep. 484.
But not presumption that the letter was deposited in the mails on that date. Shelburn Nat. Bank v. Townsley, 102 Mass. 177.
It was held by Judge Dillon, in United States v. Babcock, 3 Dill. 573, that the same legal presumption existed in favor of telegrams ; and the same doctrine was recognized, both as to letters and telegrams, in Breed v. First Nat. Bank, 5 Cal. 235. The letters and telegrams in that case were sent to a person who traveled about a great deal, but were addressed to .the place where he generally resided and where he had directed other letters to be sent, and it was held that this authorized a finding that he had knowlédge of the contents.